## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| SCOTT PHILLIPS, AS GUARDIAN AD LITEM, ON BEHALF OF S.P., B.P. and K.P. and SCOTT PHILLIPS,<br><br>Plaintiff,<br><br>v.<br><br>ARCHDIOCESE OF NEWARK, ST. THERESA SCHOOL, ST. THERESA CHURCH, CARDINAL JOSEPH TOBIN, MSGR. NYDEGGER, MARGARET DAMES, JOHN DOES 1-100, JOHN DOE CORPORATIONS 1-5, JOSEPH BEJGROWICZ, JOSEPH CAPOROSO, HELENE GODIN, SR. JULIETT PEREZ, RICHARD DONOVAN, ANH BUI, JAMES GOODNESS, ROBERT GRIMALDI, WANDA GRIMALDI, MATT POPOLA, LINDA KOSKI, MAKAYLA KOSKI, MARY FERRIS, AMBER PROTZ SIERANT, CHERYL KREINBERG, JONATHON KREINBERG, PETER RUNFOLO, JOYCE RUNFOLO, RICH HARRINGTON, KELLY DONOVAN, JEANNIE PAVLIK, MATTHEW PAVLIK, JAMES PAVLIK, MARYANN GASPER, THERESA ADUBATO, HEATHER INGERSON, MARIA HARRIS, HEATHER ST JOHN, YANCY MUNOZ, KATHLEEN SPOONAUER, CELIA SOUSA, EILEEN KELLY-O'BRIEN, VICTORIA DEVLIN, ROSEMARY RUBSAM, ROSANELLY MONTALVO, GERRI COLON, LAURIE GRIMES, MICHELLE CERNADAS, JOSEPH KRATZER JR., NATALIE WOOD, PATRICIA LANDAU, AMY REITHEL, ANN FERRARI, CYNTHIA GAILLIOT, BERADINE GILRAIN, BONNY HOTRA, BLANCA PASTORE, | Civil Action No. 2:18-cv-12207 (MCA)<br><br>**Hearing Date:  October 1, 2018**<br><br>**<u>ORAL ARGUMENT REQUESTED</u>** |

IZAIDA ROSA GARBANZO, JO RIVERA,           :
DENISE, RICHARD, JOSEPH, JESSICA,
NICHOLAS MIRABELLA, JOCELYN
EDRALIN, MANUEL VAGUEIRO, KERRI            :
KILLEN, JO ANN NETTA, NANCY
ZIMMERMAN, MARIA STREKO, ROCIO            :
CORVALAN, CHRISTINA RESTUCCIA,
MICHAEL DEVLIN, GUILLERMO
MUNOZ, DEBORAH GIVENS/MATE,
KAREN ZIMMERMAN, JIM HANNON,              :
ALICE SCALA, EMILY VIDAL, MARY
GAINES, SUSAN GIORDINO,                    :
ROSEANNE SCHUR, ANGELA
LOMBARDI, ROGER SCHUR, MICHAEL            :
MONTALVO, JEFF FERRARI, WILLIAM
GORSKI, ROGER STRYESKI, THOMAS            :
BRACKEN, FRED SOOS, SUSAN
DOUGHERTY, MICHELE MILLER, ANN            :
MORTIMER, TRISH RICKEN
PLUMMER, ANDREA ZAGORSKI                   :
SCHUSTER, MARIA BUI, AMY ROSE,
KELLY ANN HARRIS, PATRICIA RIMILI         :
BLICHARZ, "BCSH9094", "STDA" AND
"BEEZLEBROX",                              :

        Defendants.                    :

---

## BRIEF IN SUPPORT OF THE CHURCH DEFENDANTS' NOTICE OF MOTION TO DISMISS PURSUANT TO FED. R. CIV. P. 12(b)(6)

---

CARELLA, BYRNE, CECCHI, OLSTEIN,
BRODY & AGNELLO, P.C.
5 Becker Farm Road
Roseland, New Jersey 07068
(973) 994-1700
Attorneys for Defendants,
Roman Catholic Archdiocese of Newark (i.p.a.
"Archdiocese of Newark"), St. Theresa's R.C.
Church (i.p.a. "St. Theresa School"), Joseph W.

Cardinal Tobin (i.p.a. "Cardinal Joseph Tobin"), Rev. Msgr. Thomas P. Nydegger, V.G. ("i.p.a. Msgr. Nydegger"), Dr. Margaret Dames, James Goodness, Father Joseph Bejgrowicz, Deacon Joseph Caporaso (i.p.a. "Joseph Caporoso"), Sister Helene Godin, Richard Donovan, and Anh Bui

**Of Counsel and On the Brief:**
    Christopher H. Westrick, Esq. (043721997)

**On the Brief:**
    Brian H. Fenlon, Esq. (035071987)
    John V. Kelly, III, Esq. (910812012)

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ............................................................................................iii

PRELIMINARY STATEMENT..................................................................................... 1

LEGAL ARGUMENT ................................................................................................... 2

I.  THE STANDARDS GOVERNING THE CHURCH DEFENDANTS'
    MOTION TO DISMISS PURSUANT TO RULE 12(b)(6)................................. 2

II.  PLAINTIFFS' NJLAD CLAIM IN COUNT ONE IS LEGALLY
     UNSUPPORTABLE AND SHOULD BE DISMISSED. ...................................... 5

III.  BECAUSE COUNTS TWO AND SEVEN OF THE COMPLAINT
      ARE FATALLY DEFICIENT, THEY SHOULD BE DISMISSED. .................... 8

      A.  This Court Should Not Consider the Breach of Contract Claims................ 9

IV.  COUNT THREE OF THE COMPLAINT FAILS TO RAISE A
     COGNIZABLE CLAIM, AS THERE IS NO CAUSE OF ACTION
     UNDER ABBRA. ............................................................................................... 18

V.  BECAUSE THERE IS NO VALID CONTRACT, PLAINTIFFS
    HAVE NO CLAIM FOR BREACH OF THE IMPLIED COVENANT
    OF GOOD FAITH AND FAIR DEALING. ....................................................... 19

VI.  COUNTS FIVE AND SIX OF THE COMPLAINT FAIL TO STATE
     ACTIONABLE CLAIMS OF DEFAMATION AND THEY ARE
     BARRED BY THE APPLICABLE STATUTE OF LIMITATIONS................. 20

     A.  The Statute of Limitations Bars Plaintiffs' Defamation Claims
         (except as to the Archdiocese's August 14, 2017 Press Release)............. 20

     B.  Counts Five and Six are Fatally Defective and Fail to State Claims. ........ 22

VII.  BECAUSE COUNT EIGHT FAILS TO RAISE ANY COGNIZABLE
      CLAIMS AND IS BARRED BY THE LITIGATION PRIVILEGE, IT
      IS SUBJECT TO DISMISSAL. ........................................................................ 27

VIII.  COUNT NINE OF THE COMPLAINT FAILS TO STATE CLAIMS
       UPON WHICH RELIEF MAY BE GRANTED FOR NEGLIGENCE
       AND NEGLIGENT AND INTENTIONAL INFLICTION OF
       EMOTIONAL DISTRESS.............................................................................. 32

i

1.   Plaintiffs' Negligence Claim Fails to State a Claim Upon Which
     Relief May Be Granted. ........................................................................ 33

2.   Any IIED Claim Raised in Count Nine Fails to State a Claim. ................. 35

3.   Any NIED Claim Raised in Count Nine Fails to State a Claim.................. 36

IX.  BECAUSE THE CHURCH DEFENDANTS ARE EXEMPT FROM
     THE CFA, COUNT TEN MUST BE DISMISSED. .......................................... 39

CONCLUSION ............................................................................................................ 41

## <u>TABLE OF AUTHORITIES</u>

**Cases**                                                               **Page(s)**

*Ahn v. Kim,*
   145 N.J. 423 (1996) ........................................................................................37

*Alexander v. Cigna Corp.,*
   991 F. Supp. 427 (D.N.J.), *aff'd. o.b.*, 172 F.3d 859 (3d. Cir. 1998)......................28

*Ashcroft v. Iqbal,*
   129 S.Ct. 1937 (2009) ..........................................................................3, 4, 20, 33

*Barker v. Brinegar,*
   346 N.J. Super. 558 (App. Div. 2002) ...............................................................16

*Barker v. Our Lady of Mount Carmel Sch.,*
   2016 WL 4571388 (D.N.J. Sept. 1 2016) ................................................. *passim*

*Baxt v. Liloia,*
   155 N.J. 190 (1998) ........................................................................................29

*In re Bayside Prison Litig.,*
   190 F.Supp.2d 755 (D.N.J. 2002) .......................................................................4

*Bell Atlantic Corp. v. Twombly,*
   550 U.S. 544 (2007)...........................................................................................2

*Berkery v. Estate of Stuart,*
   412 N.J. Super. 76 (App. Div. 2010) .................................................................24

*Berkery v. Kinney,*
   397 N.J. Super. 222 (App. Div. 2007) ...............................................................24

*Board of Tr. of Trucking Employees of North Jersey Welfare Fund, Inc. v. Centra,*
   983 F.2d 495 (3d Cir. 1992)..............................................................................15

*Buckley v. Trenton Saving Fund Society,*
   111 N.J. 355 (1988) ........................................................................................36

*In re Burlington Coat Factory Sec. Litig.,*
   114 F.3d 1410 (3d Cir. 1997)..............................................................4, 28, 29

*Calvary Christian Sch., Inc. v. Huffstuttler,*
   367 Ark. 117 (2006)..................................................................................11, 12

*Chamberlain v. Giampapa,*
   210 F.3d 154 (3d Cir. 2000).................................................................................4

*Churchill v. State,*
    378 N.J. Super. 471 (App. Div. 2005) ...............................................................21

*Coyle v. Englander's,*
    199 N.J. Super. 212 (App. Div. 1985) ..............................................................17

*Dairy Stores, Inc. v. Sentinel Pub. Co., Inc.,*
    104 N.J. 125 (1986) ...........................................................................23, 24, 25, 26

*DeAngelis v. Hill,*
    180 N.J. 1 (2004) ...............................................................................................22

*Decker v. Princeton Packet, Inc.,*
    116 N.J. 418 (1989) ...........................................................................................37

*DeJoy v. Comcast Cable Comm., Inc.,*
    941 F.Supp. 468 (D.N.J. 1996) ..........................................................................3

*Delaware River P.A. v. Fraternal Order of Police,*
    290 F.3d 567 (3d Cir. 2002).........................................................................15, 16

*DM Research, Inc. v. College of Amer. Pathologists,*
    170 F.3d 53 (1st Cir. 1999)..............................................................................2, 19

*Durand Equip. Co. v. Superior Carbon Prods.,*
    248 N.J. Super. 581 (App. Div. 1991) ..........................................................31, 32

*Ellmex Const. Co. v. Republic Ins. Co.,*
    202 N.J. Super. 195 (App. Div. 1985) ..............................................................17

*Funk v. Commissioner of Internal Revenue,*
    163 F.2d 796 (3d Cir. 1947)................................................................................4

*G.D. v. Kenny,*
    205 N.J. 275 (2011) ...............................................................................25, 26, 39

*Gaston v. Diocese of Allentown,*
    712 A.2d 757 (Pa. Super. Ct. 1998)..............................................................11, 12

*Gennari v. Weichert Co. Realtors,*
    148 N.J. 582 (1997) ...........................................................................................28

*Gourdine v. Felician College,*
    2006 WL 2346278 (N.J. App. Div., August 15, 2006)....................................40

*Gray v. St. Cecilia School,*
    217 N.J. Super. 492 (App. Div. 1987) ..............................................................34

iv

*Gutman v. Howard Savings Bank,*
   748 F. Supp. 254 (D.N.J. 1990) ..............................................................29

*Hawkins v. Harris,*
   141 N.J. 207 (1995) ...................................................................30, 31

*Hehre v. DeMarco,*
   421 N.J. 501 (App. Div. 2011).................................................................35

*Hoffman v. Hampshire Labs, Inc.,*
   405 N.J. Super. 105 (App. Div. 2009) ......................................................39

*I.J. v. I.S.,*
   328 N.J. Super. 166 (Ch. Div. 1999) ........................................................30

*J.C.P. & L. Co. v. Melcar Utility Co.,*
   212 N.J. 576 (2013) .............................................................................33

*K.J. v. Greater Egg Harbor Reg. High School District Board of Educ.,*
   2015 WL 5039460 (D.N.J. August 26, 2015)............................................18

*L.W. ex rel, L.G. v. Toms River Regional School Board of Education,*
   189 N.J. 381 (2007) ..............................................................................5

*Larkin v Grendel's Den, Inc.,*
   459 U.S. 116 (1982)..............................................................................9

*Lascurain v. City of Newark,*
   349 N.J. Super. 251 (App. Div. 2002) .....................................................37

*Ledesma for Ledesma v. Dillard Dept. Stores, Inc.,*
   818 F.Supp. 983 (N.D. Tex. 1993) ............................................................3

*Lee v. First Union Nat'l Bank,*
   199 N.J. 251 (2009) .............................................................................39

*Lemon v. Kurtzman,*
   403 U.S. 602 (1971)............................................................................10

*Loder v. St. Thomas Greek Orthodox Church,*
   295 N.J. Super. 297 (App. Div. 1996) .....................................................34

*Lone v. Brown,*
   199 N.J. Super. 420 (App. Div. 1985) .....................................................13

*Matter of Lymecare, Inc.,*
   301 B.R. 662 (Bankr. N.J. 2003) ............................................................15

*Macedo v. Dello Russo,*
    178 N.J. 340 (2004) ................................................................39

*McKelvey v. Pierce,*
    173 N.J. 26 (2002) ............................................................10, 11

*Michelman v. Erlich,*
    311 N.J. Super. 57 (App. Div. 1998) ...........................................4

*Milcarek v. Nationwide Ins. Co.,*
    190 N.J. Super. 358 (App. Div. 1983) ........................................17

*Monek v. Borough of South River,*
    354 N.J. Super. 442 (App. Div. 2002) ........................................16

*Montana v. U.S.,*
    440 U.S. 147 (1979) .................................................................16

*Nappe v. Anchelewitz, Barr, Ansell & Bonello,*
    97 N.J. 37 (1984) .....................................................................28

*Neitzke v. Williams,*
    490 U.S. 319 (1985) ...................................................................3

*Noye v. Hoffmann-La Roche Inc.,*
    238 N.J. Super. 430 (App. Div. 1990) ........................................19

*Peterson v. Atlanta Housing Auth.,*
    998 F.2d 904 (11th Cir. 1993) ....................................................3

*Peterson v. Ballard,*
    292 N.J. Super. 575 (App. Div. 1996) ........................................31

*Petty v. General Accident Fire & Life Assur. Corp.,*
    365 F.2d 419 (3d Cir. 1966) .....................................................32

*Plevy v. Schaedel,*
    44 N.J. Super. 450 (Law Div. 1957) ..........................................30

*Printing Mart-Morristown v. Sharp Elecs. Corp.,*
    116 N.J. 739 (1989) .................................................................22

*Public Service Ent. Group, Inc., v. Philadelphia Electric Comp.,*
    722 F.Supp. 184 (D.N.J. 1989) .................................................12

*Pyles v. United Air Lines, Inc.,*
    79 F.3d 1046 (11th Cir. 1996) ...............................................3, 17

*Remco Distrib., Inc. v. Oreck Corp.,*
    814 F.Supp. 171 (D.Mass), *aff'd per curiam,* 981 F.2d 1245 (1st Cir. 1992) ....................3, 17

*Rocci v. Ecole Secondaire Macdonald-Cartier,*
    165 N.J. 149 (2000) .........................................................................................23, 25, 26

*Romeo v. Seton Hall Univ.,*
    378 N.J. Super. 384 (App. Div. 2005) ...............................................................7, 16

*Schmidt v. Skolas,*
    770 F.3d 249 (3d Cir. 2014)..................................................................................4

*Senna v. Florimont,*
    196 N.J. 469 (2008) .........................................................................................23, 24

*Serbian Eastern Orthodox Diocese for the United States of America and Canada*
    *v. Milivojevich,*
    426 U.S. 696 (1976)..........................................................................................9, 10

*Simpson v. Wigder,*
    311 N.J. Super. 379 (App. Div. 1998) ................................................................28

*Sisler v. Gannett Co., Inc.,*
    104 N.J. 256 (1986) .............................................................................23, 24, 25, 27

*Smith v. Diocese of Camden Annunciation Sch.,*
    2009 WL 1531679 (N.J. App. Div. June 3, 2009) ..........................................34, 35

*Sons of Thunder, Inc. v. Borden, Inc.,*
    148 N.J. 396 (1997) ..........................................................................................19

*Southern Cross Overseas Agencies, Inc. v. Wah Kwong Shipping Group Ltd.,*
    181 F.3d 410 (3d Cir. 1990).................................................................................5

*In re St. Thomas High Sch.,*
    495 S.W.3d 500 (Tex. App. 2016).......................................................................12

*Stanley Co. of America v. Hercules Powder Co.,*
    16 N.J. 295 (1954) ............................................................................................33

*Swan v. Boardwalk Regency Corp.,*
    407 N.J. Super. 103 (App. Div. 2009) ...............................................................21, 22

*Thiedemann v. Mercedes-Benz USA, LLC,*
    183 N.J. 234 (2005) ..........................................................................................40

*Thomas v. East Orange Board of Educ.,*
    998 F.Supp.2d 338 (D.N.J. 2014) ......................................................................18

*Thomas v. Ford Motor Co.*,
 137 F.Supp.2d 575 (D.N.J. 2001) ..................................................................................32

*Trustees of Local 478 Pension Fund v. Pirozzi*,
 198 N.J. Super. 297 (Law Div. 1983), *aff'd per curiam*, 198 N.J. Super. 318
 (App. Div. 1984) ..................................................................................29, 30

*Turner v. Wong*,
 363 N.J. Super. 186 (App. Div. 2003) ..................................................................................36

*Wade v. Kessler Institute*,
 172 N.J. 327 (2002) ..................................................................................19, 20

*Watiti v. Walden Univ.*,
 2008 WL 2280932 (D.N.J., May 30, 2008) ..................................................................................40

*Watson v. Jones*,
 13 Wall 679, 20 L.Ed. 666 (1872) ..................................................................................9

*Wazeerud-Din v. Goodwill Home & Missions, Inc.*,
 325 N.J. Super. 3 (App. Div. 1999) ..................................................................................6, 7

*Weichert Co. Realtors v. Ryan*,
 128 N.J. 417 (1992) ..................................................................................13

*Williams v. Edelman*,
 408 F.Supp.2d 1261 (S.D. Fla. 2005) ..................................................................................3

*Wilson v. Amerada Hess Corp.*,
 168 N.J. 236 (2001) ..................................................................................19

*Yurick v. State*,
 184 N.J. 70 (2005) ..................................................................................4

*Zaman v. Felton*,
 219 N.J. 199 (2014) ..................................................................................39

*Zelnick v. Morristown-Beard School*,
 445 N.J. Super. 250 (App. Div. 2015) ..................................................................................18, 33, 38

*Zoneraich v. Overlook Hosp.*,
 212 N.J. Super. 83 (App. Div. 1986) ..................................................................................22

**Statutes**

20 U.S.C. § 1681 ..................................................................................2, 5

*N.J.S.A.* 2A:14-3 ..................................................................................20

*N.J.S.A.* 2C:28-1 and -2 .............................................................................................29, 30

*N.J.S.A.* Title 18A, generally.............................................................................................40

New Jersey Charitable Immunity Act, *N.J.S.A.* 2A53A-7 to 11 ..................................32, 33, 34, 35

New Jersey Consumer Fraud Act, *N.J.S.A.* 56:8-1, *et seq.* .......................................39, 40

New Jersey Punitive Damages Act *N.J.S.A.* 2A:15-5.15 ............................................17

New Jersey's Anti-Bullying Bill of Rights Act, *N.J.S.A.* 18A:37-13, *et seq.* ..............18, 19, 20, 33

New Jersey Law Against Discrimination *N.J.S.A.* 10:5-1, *et seq.* ........................................5, 6, 7, 8

**Other Authorities**

Fed.R.Civ.P. 12(b)(6)..................................................................................... *passim*

Fed.R.Civ.P. 9 .........................................................................................22, 28, 29, 39, 40

*Restatement (Second) of Torts* (1977)........................................................................22

N.J. Rule of Professional Conduct 3.3 ........................................................................29

*U.S. CONST. Amend. 1* ........................................................................................9, 23, 25

*U.S. CONST. Amend. 14* ........................................................................................9, 10

## PRELIMINARY STATEMENT

By filing this action, Plaintiff Scott Phillips, individually and as guardian *ad litem* for his children, S.P., B.P., and K.P. ("Plaintiffs" collectively), seeks to **again** force Defendants Roman Catholic Archdiocese of Newark ("Archdiocese"), St. Theresa's R.C. Church ("St. Theresa"), St. Theresa's School ("STS"), Joseph W. Cardinal Tobin, Rev. Msgr. Thomas P. Nydegger, V.G., Dr. Margaret Dames, James Goodness, Father Joseph Bejgrowicz, Deacon Joseph Caporaso, Sister Helene Godin, Richard Donovan, and Anh Bui (collectively, the "Church Defendants") to defend baseless claims without factual or legal basis, relating to the education of K.P., S.P., and B.P. at STS including, *inter alia*, the denial of re-enrollment to S.P. and K.P. due to their parents' continuum of outrageous misconduct.  During their children's enrollment at STS, Phillips and his wife, Theresa Mullen ("Mullen"), on numerous occasions unreasonably disagreed with their assignments, grades, student interactions, and how extracurricular activities and disciplinary matters were administered by STS.  In each of these instances Phillips and Mullen became highly confrontational and antagonistic with STS personnel.

The Church Defendants, in an effort to follow their mission of providing a Catholic education to all STS students, felt that mission was best served without the ongoing disruptions and distractions of Plaintiff and Mullen.  As a result, they declined to re-enroll S.P. and K.P. for the 2017-18 school year.  Plaintiffs sued the Church Defendants in the Superior Court of New Jersey, Chancery Division, Essex County, Docket No. ESX-C-248-16 (the "Superior Court Action").  They subsequently tried to join in that state court proceeding approximately 80 STS parents, students, and parishioners, over perceived slights relating to online postings about the controversy.  The trial court rejected these efforts to expand the Superior Court Action.  The

Church Defendants ultimately prevailed in that action on August 14, 2017, following a plenary trial.  See Declaration of Brian H. Fenlon, Esq. ("Fenlon Decl."), Exhs. B and C.

By means of the Complaint, the Plaintiffs improperly seek a "second bite at the apple" and to re-litigate a large number of numerous factual and legal determinations already rendered by the Hon. Donald A. Kessler, J.S.C. in the Superior Court Action.  With one possible exception, the purported claims set forth in the Complaint do not state claims upon which relief may be granted within the meaning of Fed.R.Civ.P. 12(b)(6).  Therefore, the challenged Counts of Plaintiffs' Complaint are subject to dismissal by this Court.  *See* Fenlon Decl., Exh. A.

## LEGAL ARGUMENT

### I.    THE STANDARDS GOVERNING THE CHURCH DEFENDANTS' MOTION TO DISMISS PURSUANT TO RULE 12(b)(6).

The Church Defendants move under Fed.R.Civ.P.12(b)(6) to dismiss the Complaint (except as to any Title IX claim purportedly raised in Count One under 20 U.S.C. §1681), for failure to state claims upon which relief may be granted.  A complaint will be dismissed on the pleadings if the Plaintiffs failed to plead grounds to their entitlement to relief.  The Complaint must go beyond alleging labels and conclusions and mere formulaic recitations of the elements of a cause of action, and is required to set forth factual allegations which raise the right to relief beyond a speculative level. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  The precept that factual allegations must be accepted for purposes of a Rule 12(b)(6) motion does not automatically extend to bald assertions, subjective characterizations or legal conclusions.  The factual allegations contained in a legally sufficient complaint must be specific enough to justify "dragging a defendant past the pleading threshold in any given case."  *DM Research, Inc. v. College of Amer. Pathologists*, 170 F.3d 53, 55 (1st Cir. 1999).

Dismissal is warranted when the complaint runs contrary to a dispositive issue of law as to which no construction of the factual allegations will suffice, *Williams v. Edelman*, 408 F.Supp.2d 1261, 1264 (S.D. Fla. 2005), or "lacks a sufficient factual predicate." *Pyles v. United Air Lines, Inc.*, 79 F.3d 1046, 1049 (11th Cir. 1996). The sweep of Rule 12(b)(6) clearly covers "claims of law which are obviously insupportable." *Neitzke v. Williams*, 490 U.S. 319, 327 (1985).

To survive this motion, Plaintiffs must have set forth in the Complaint factual allegations, either direct or inferential, regarding each material element necessary to sustain recovery under actionable legal theories. *Remco Distrib., Inc. v. Oreck Corp.*, 814 F.Supp. 171, 174 (D.Mass), *aff'd per curiam,* 981 F.2d 1245 (1st Cir. 1992). A complaint fails to state a claim where it has pled nothing factually that satisfies each of the requisite elements of the particular cause of action. *Pyles*, 79 F.3d at 1049. Complaints should be dismissed where they lack a sufficient factual predicate to substantiate the claims presented. The Court's "duty to liberally construe a plaintiff's complaint in the face of a motion to dismiss is not the equivalent of a duty to rewrite it" or to supply missing factual allegations. *Peterson v. Atlanta Housing Auth.*, 998 F.2d 904, 912 (11th Cir. 1993). Where a complaint omits facts concerning pivotal elements of a claim, the Court is justified in assuming the non-existence of the omitted facts. *Ledesma for Ledesma v. Dillard Dept. Stores, Inc.*, 818 F.Supp. 983, 984 (N.D. Tex. 1993). Further, it is inappropriate for the Court to presume the Plaintiffs can prove any facts which they have not alleged. *DeJoy v. Comcast Cable Comm., Inc.*, 941 F.Supp. 468, 473 (D.N.J. 1996).

Complaints are to be dismissed where they offer merely conclusions, formulaic recitations of the elements of a cause of action, or tender naked assertions devoid of further factual enhancement. *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009). "To survive a motion to

dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id. (*quoting *Twombly*, 550 U.S. at 555).

In considering motions to dismiss involving state law claims, the existence or non-existence of a claimed cause of action is to be governed by the applicable state substantive law. *See Chamberlain v. Giampapa*, 210 F.3d 154, 158 (3d Cir. 2000); *see also Yurick v. State*, 184 N.J. 70 (2005); *Michelman v. Erlich*, 311 N.J. Super. 57 (App. Div. 1998).

Generally, on Rule 12(b)(6) motions, the Court is limited to the four corners of the pleading in issue.  However, documents which are attached to, integral to or relied upon in the pleadings as well as matters of public record, are deemed to be part of the pleadings and may be considered by the Court without converting the motion to a motion for summary judgment per Rule 12(b).  *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997); *In re Bayside Prison Litig.*, 190 F.Supp.2d 755, 760 (D.N.J. 2002).  Such documents need not actually be annexed to the pleadings to be considered by the Court; they may have been partially quoted in the pleadings or simply referenced therein. *Burlington*, 114 F.3d at 1426.

District courts in deciding Rule 12(b)(6) motions may consider documents which are integral to or explicitly relied on by plaintiff in drafting his complaint without converting the motion to a summary judgment motion. *Schmidt v. Skolas*, 770 F.3d 249 (3d Cir. 2014).  Courts may take judicial notice of public records, including decision and reports of government agencies. *Id.*  The extent to which federal courts may take judicial notice of public proceedings "depends to a large degree upon considerations of expediency and justice under the particular circumstances of a case, as well as upon what it is that a court is asked to notice." *See Funk v. Commissioner of Internal Revenue*, 163 F.2d 796, 801 (3d Cir. 1947).  When considering a Rule 12(b)(6) motion, the Court may take judicial notice of another court's opinion, not for the truth of

the facts recited therein but for the existence of the opinion. *Southern Cross Overseas Agencies, Inc. v. Wah Kwong Shipping Group Ltd.*, 181 F.3d 410, 426-27 (3d Cir. 1990). Whether the court may judicially notice another's proceedings depends on what the Court is asked to notice and the circumstances of the case. *Id.*

In applying the foregoing standards governing Rule 12(b)(6) motions to the Complaint, the Court should find the challenged pleading fails to state valid or legally cognizable claims and the Church Defendants' motion should be granted.

## II.   PLAINTIFFS' NJLAD CLAIM IN COUNT ONE IS LEGALLY UNSUPPORTABLE AND SHOULD BE DISMISSED.

Count One of the Complaint asserts the Archdiocese, St. Theresa, and/or STS, by allegedly refusing to allow S.P. to play basketball, violated the New Jersey Law Against Discrimination, *N.J.S.A.* 10:5-1, *et seq.* ("NJLAD"). *See* Fenlon Decl., Exh. A (Complaint, p. 19). This Count specifically names only those three of the Church Defendants, and no allegations are raised against the others. The instant motion does not address Count One to the extent it purports to raise a Title IX, 20 U.S.C. § 1681 claim.

The NJLAD provides that all persons shall have the opportunity to obtain all the advantages and privileges of any places of public accommodation, without discrimination, including based on gender. *N.J.S.A.* 10:5-4. The NJLAD's protections apply solely to places of public accommodation, and it has been held to apply to public school students and gender discrimination in the public schools. *See L.W. ex rel, L.G. v. Toms River Regional School Board of Education*, 189 N.J. 381, 400-402 (2007).

As a matter of law, Count One of the Complaint fails to state a claim of gender discrimination in violation of NJLAD. It presents nothing more than a single bald and

conclusory assertion that the Archdiocese, St. Theresa, and/or STS violated that statute. The Count as pled is fatally defective and fails to set forth a viable claim upon which relief could be granted for gender discrimination under NJLAD. More importantly, the NJLAD's own terms expressly command that STS (a Catholic primary school maintained and operated by St. Theresa), is not a place of public accommodation:

> Nothing herein contained shall be construed to include or to apply to any institution, bona fide club, or place of accommodation, which is in its nature distinctly private; **nor shall anything herein contained apply to any educational facility operated or maintained by a bona fide religious or sectarian institution** . . .

*N.J.S.A.* 10:5-5(l)(emphasis added).

New Jersey courts have concluded that churches, religious institutions and private religious schools are not places of public accommodation. *Wazeerud-Din v. Goodwill Home & Missions, Inc.*, 325 N.J. Super. 3, 10 (App. Div. 1999). In that case, the Appellate Division cogently found:

> Although churches, seminaries and religious programs are not expressly excluded from the definition of place of public accommodation, the Legislature clearly did not intend to subject such facilities and activities to the LAD. None of the enumerated examples of public accommodations set forth in *N.J.S.A.* 10:5-5(*l*) are similar in any respect to a place of worship or religious training. Furthermore, a church or other religious institution does not ordinarily solicit the general public's participation, which is a principal characteristic of public accommodations. . . The conclusion that religious facilities and activities are not public accommodations is also supported by the Division on Civil Rights' long-standing position, as expressed in an affidavit which its former director submitted in connection with other litigation, that the LAD does not regulate or control religious worship, beliefs, governance, practice or liturgical norms . . .

*Id. Wazeerud-Din* holds NJLAD is inapplicable to educational facilities operated or maintained by bona fide religious institutions because the statute's religious exemption clearly applies to

"both elementary and high schools operated by religious institutions under the supervision of the State Board of Education. . . ." *Id.* at 15.

In *Romeo v. Seton Hall Univ.*, 378 N.J. Super. 384 (App. Div. 2005), the Appellate Division equally concluded NJLAD was inapplicable to Catholic schools and the Act's prohibition of discrimination does not apply to religiously affiliated institutions. *Id.* at 388-89. The Court overruled the trial court's denial of the University's motion to dismiss, finding the denial was erroneous. *Id.* The plaintiff claimed he had the right to create a gay extracurricular club. *Id.* at 387-88. Refused the ability to do so, he argued his rights under NJLAD were violated. *Id.* Faced with the plain language of the NJLAD's religious exemption, he argued the University had waived the exemption by including a non-discrimination policy in its student handbook. The Court analyzed federal and state precedents in concluding the religious "exemption in *N.J.S.A.* 10:5-5(1) cannot be waived" and further that anti-discrimination policies in school handbooks are insufficient as a matter of law to constitute any waiver of that exemption. *Id.*

In *Barker v. Our Lady of Mount Carmel Sch.*, 2016 WL 4571388 (D.N.J. Sept. 1 2016), this Court relied on *Wazeerud-Din* in holding the NJLAD's religious exemption rendered it inapplicable to educational facilities operated or maintained by *bona fide* religious institutions, such as a Catholic elementary school. *Id.* at *14-15. This Court further ruled that the NJLAD did not apply to the Catholic church which maintained and operated the school, or to the Archdiocese. *Id.* at 15. Consequently, the plaintiffs' NJLAD claims against the Catholic institutional defendants failed as a matter of law and were dismissed. *Id.*

Count One asserts no specific allegations against the other individual Church Defendants. In *Barker*, because the individually named principal's employers, *i.e.*, the Church and the

Archdiocese, were exempt from NJLAD liability, plaintiffs were unable to impose liability on the principal either.  NJLAD claims against supervisors are not viable unless those persons aid and abet their employers' discriminatory conduct.  Because the Archdiocese, St. Theresa and STS are exempt, so too are Cardinal Tobin, Monsignor Nydegger, Dr. Dames, Father Bejgrowicz, Deacon Caporaso, Sister Grodin, Sister Perez, Mr. Donovan and Mr. Bui.

In this case, it cannot be genuinely disputed that the Archdiocese and St. Theresa are *bona fide* Catholic religious institutions or that STS is an "educational facility operated and maintained" by St. Theresa, a Catholic church.   Plaintiffs' claim of NJLAD gender discrimination fails as a matter of law, based on the Legislature's unequivocal exemption of private religious institutions and primary/secondary schools from that statute's ambit.[1]  As a result, Count One of the Complaint fails to state a claim and should, respectfully, be dismissed with prejudice as to all the Church Defendants.

### III.  BECAUSE COUNTS TWO AND SEVEN OF THE COMPLAINT ARE FATALLY DEFICIENT, THEY SHOULD BE DISMISSED.

In Counts Two and Seven, and potentially in Count Three of the Complaint, it seems Plaintiffs are asserting breach of contract claims for (1) alleged failure to address certain disciplinary issues reported by S.P.; (2) his daughters' two day expulsion in February 2017; and (3) STS' April 2017 refusal to re-enroll his daughters for the 2017-18 school year (which Plaintiffs continue to label an "expulsion", notwithstanding Judge Kessler's ruling that it was not).  This Court lacks the jurisdiction to hear Plaintiffs' contract claims because the Church Defendants are private Catholic religious institutions and officials, free to minister to their flock

---

[1] In his Statement of Reasons issued to the New Jersey Appellate Division in the Superior Court Action, Judge Kessler expressly ruled the Archdiocese, St. Theresa, and STS a not places of public accommodation under NJLAD and a exempted by NJLAD's religious exemption. *See* Fenlon Decl., Exh. D (Opinion, pp. 20-24).

as they deem appropriate. Regardless, in all instances the Plaintiffs failed to plead the requisite elements of any viable breach of contract claims. Moreover, Judge Kessler explicitly ruled in the Superior Court Action that the Church Defendants reasonably addressed all of the complaints and grievances raised by S.P. and her parents, there was no expulsion in April 2017, and there was no contract for the upcoming school year, hence no basis for a breach of contract claim.

### A. This Court Should Not Consider the Breach of Contract Claims.

The First Amendment protects the Church Defendants from undue interference by the State in implementation of this Catholic Church's internal doctrine. The First Amendment's religious guarantees impose a "wall of separation" between church and state. *Larkin v Grendel's Den, Inc.*, 459 U.S. 116, 122 (1982). The Free Exercise Clause prohibits civil courts from exercising jurisdiction over ecclesiastical precepts. The First Amendment states, in pertinent part: "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof." *U.S. CONST. Amend. 1.*

The principles limiting civil court resolution of religious matters arise from *Watson v. Jones*, 13 Wall 679, 20 L.Ed. 666 (1872), a case decided before the First Amendment was held applicable to the States via the Fourteenth Amendment. There the Supreme Court stated:

> [T]he rule of action which should govern the civil courts . . . is, that, whenever the questions of discipline, or of faith, or ecclesiastical rule, custom or law have been decided by the highest of the church judicatories to which the matter has been carried, the legal tribunals must accept such decisions as final, and as binding on them, in their application to the case before them.

*Id.* at 727.

More recently, the Supreme Court applied the First Amendment to the States via the Fourteenth Amendment. *See Serbian Eastern Orthodox Diocese for the United States of America and Canada v. Milivojevich*, 426 U.S. 696 (1976). In *Serbian Eastern*, a state trial court

9

adjudicated a bishop's defrockment as being proper.  On appeal, the Illinois Supreme Court held the mother church's proceedings regarding that bishop were procedurally and substantively defective under internal regulations of that church. On *certiorari*, the Supreme Court held the First Amendment's guarantee of free exercise of religion applies to the States via the Fourteenth Amendment, and that state courts are not permitted to interfere in clerical matters. In reaching this conclusion, the Court stated:

> Indeed, it is the essence of religious faith that ecclesiastical decisions are reached and are to be accepted as matters of faith whether or not rational or measurable by objective criteria.  Constitutional concepts of due process, involving secular notions of "fundamental fairness" or impermissible objectives are therefore hardly relevant to ... matters of ecclesiastical cognizance.

*Id.* at 714-15.  Thus, under the Free Exercise Clause, the state is restricted from intruding into ecclesiastical matters or interfering with a given Church's governance of its own affairs.

The Establishment Clause prohibits the government from becoming too entangled in religious affairs.  To determine whether state involvement passes muster, the action (1) must have a secular legislative purpose, (2) its principal or primary effect  must be one that neither advances nor inhibits religion, and (3) the statute must not foster excessive government entanglement with religion.  *Lemon v. Kurtzman*, 403 U.S. 602, 613 (1971).  Evaluation of whether a particular lawsuit excessively entangles the State in church matters is conducted through a substantive and procedural review.  *McKelvey v. Pierce*, 173 N.J. 26, 41-42 (2002). Substantive entanglement involves the same concerns as the Free Exercise Clause, and may occur when civil courts involve themselves in a church's freedom to select, discipline and/or terminate its ministers. Id. at 42.

> Thus, where a minister seeks redress for termination, failure to hire, changes in work schedule, or other similar decisions involving, at their heart, a church's core right to decide who (and in what manner he or she) may propagate its religious

beliefs, the Establishment Clause clearly prevents review by a civil court.

*Id.* (citing *Bollard v. California Province of the Society of Jesus*, 196 F.3d 940, 946 (9th Cir. 1999)).  Procedural entanglement occurs when the Church and State are matched against each other in an extended adversarial proceeding. *Id.* The concern then is not just that the civil authority may reach a result that is contrary to the Church's substantive freedoms, but that the very processes of the civil authority may have an impact, such as protracted oversight of Church activities. *Id.*

In this case, Plaintiffs' unquestionably ask this Court to interject itself into the Church Defendants' ecclesiastical determinations.  The STS Mission Statement sets forth the importance of fostering "a family atmosphere in which each individual experiences respect, challenge, responsibility, and exceptional love" using "Christ and Mary as our examples".  *See* Fenlon Decl., Exh. E, p.3.  The discipline of church members, including who can participate in religious services and education is a matter that is wholly religious, incompatible with secular oversight.

In *Calvary Christian Sch., Inc. v. Huffstuttler*, 367 Ark. 117 (2006), a student was disenrolled from a religious school based upon the improper conduct of his parents.  *Id.* at 127-29.  The Arkansas Supreme Court held the courts lacked jurisdiction to rule on any of the claims arising out of the disenrollment.  *Id.* at 127.  Specifically, the Court found the disenrollment was due to the parents' failure to comply with the "Matthew 18" principles stated in that school's handbook.  The Court held that any claims arising out of the disenrollment will therefore, require the Court to determine whether the plaintiffs did or did not comply with Matthew 18 (a biblical reference).  Therefore, the Court dismissed the claims for lack of jurisdiction.

In *Gaston v. Diocese of Allentown*, 712 A.2d 757 (Pa. Super. Ct. 1998), a Catholic school expelled plaintiffs' son and daughter, after the principal felt threatened during an interaction with

the father over a curriculum dispute. *Id.* at 757. The plaintiffs filed claims of intentional and

negligent infliction of emotional distress. *Id.* at 758. The Court held:

> The question here, however, is not a property or contractual dispute. It is a claim
> that hints at tort law, but is based on an expulsion decision ratified by a bishop; it
> is, in our opinion, not receptive to application of neutral principles of law. The
> Catholic school's disciplinary code and review of expulsion involve matters of
> church doctrine.

*Id.* at 760.

Similarly, *In re St. Thomas High Sch.,* 495 S.W.3d 500 (Tex. App. 2016), a Texas

appeals court held the courts lacked jurisdiction to hear a case where the parents alleged sexual

harassment against their son's teacher together with other highly charged slanderous accusations

after a dispute over a low grade. *Id.* at 503-04. The school investigated and found the claims to

be unfounded. As a result, the school expelled the child because it would have been difficult, if

not impossible for any teacher to educate the student without fear of similar retribution going

forward. *Id.* at 504. The parents sued for breach of contract, specific performance, and

injunctive relief. *Id.* The Court determined the expulsion was the result of the Catholic school's

management of its internal affairs, over which it could not exercise jurisdiction. *Id.* at 513.

Here, just as in *Calvary Christian, Gaston,* and *St. Thomas*, a judicial resolution by this

Court will interfere with St. Theresa's management of its internal affairs and encroach upon its

internal governance.

Should the Court reach the merits of Plaintiffs' breach of contract allegations, to establish

a breach of contract claim, they must show there was a "(1) contract; (2) a breach of that contract;

(3) damages flowing therefrom; and (4) that plaintiff performed its own contractual duties."

*Public Service Ent. Group, Inc., v. Philadelphia Electric Comp.*, 722 F.Supp. 184, 219 (D.N.J.

1989). Contracts arise from offer and acceptance, and they must be sufficiently definite so that

the performance to be rendered by each party can be ascertained with reasonable certainty. *Weichert Co. Realtors v. Ryan*, 128 N.J. 417, 435 (1992). Importantly, the "plaintiff must identify the specific contract or provision that was allegedly breached." *Angela Barker v. Our Lady of Mount Carmel School*, 2016 WL 4571388, *15 (D.N.J., Sept. 1, 2016) (citing *Skypala v. Mortgage Electronic Registration Systems, Inc.*, 655 F.Supp.2d 451, 459 (D.N.J. 2009)).

Any failure to plead one or more of the four necessary elements for a valid breach of contract claim is fatal. Thus, even where a pleader demonstrates both a contract and a clear and identifiable breach, and plaintiff performed all his obligations under the contract, but fails to identify any damages, a breach of contract claim does not lie. *See Lone v. Brown,* 199 N.J. Super. 420, 425 (App. Div. 1985).

In Count Two, Plaintiffs allege the Church Defendants "are in breach of contract" or "in violation of the provisions of the STS Handbook" for allegedly failing to properly address grievances raised by them, by expelling S.P. and K.P., and by depriving S.P. of access to educational opportunities provided by STS. *See* Fenlon Decl., Exh. A, (Complaint pp. 19-20). In Count Seven, they assert the same named Defendants improperly and wrongfully expelled S.P. and K.P. and therefore were "in breach of contract of the STS Handbook". *Id.* at p.23.

Facial review of Counts Two and Seven reveal they are subject to dismissal under Rule 12(b)(6) because they omitted any factual predicates on each requisite element of a viable breach of contract claim. Thus, they fail as a matter of law, as does any breach of contract claim that may be raised in Count Three. *Id.* There are no allegations as to the nature and existence of the contract in question, nor is there any identification of a specific contract or provisions that were allegedly breached. Similarly, these Counts fail to contain allegations on the causal relationship

between the purported breaches and the Plaintiffs' alleged damages. They also contain no assertions that Plaintiffs performed their own duties and obligations under any contract.

The factual contentions upon which Plaintiffs premise these Counts (and most of the Complaint) were expressly decided against them in the Superior Court Action. As such, those Counts are also barred by the doctrine of issue preclusion/collateral estoppel. "The court would be remiss if it did not emphasize that Plaintiffs' 2016 issues were resolved as to sexual misconduct and bullying, thus, plaintiffs' position, to the extent that it raises these issues time and again, seems to serve little purpose." *See* Fenlon Decl., Exh. B (Opinion at T.58:15-20). Judge Kessler entirely rejected the Plaintiffs' accusations against the Church Defendants, finding:

> [T]here were issues about the alleged inappropriate sexual behavior which was addressed, the substitute teacher that was addressed, the issue with a gun which was addressed, and the valedictorian issue, which was addressed but not to the satisfaction of the plaintiffs. But everything doesn't have to be to the plaintiffs' satisfaction. Somehow there's a suggestion if it's not to the plaintiffs' way, it's not the right way. And that's not the way any institution has to operate.

*See* Fenlon Decl., Exh. B (Plenary Hearing Op., T.78:8-11).

> Dr. Dames specifically tried to stop the petition and neither STS nor the Archdiocese have any power to take down that petition. What they did about is, Dr. Dames asked members of the community not to sign it anymore and teachers were told by Deacon Joe and Dr. Dames that they were not to sign such a petition going forward. So they did try to act. . . the teachers were told not to post negative facebook comments and members of the community were likewise asked to stop such behavior.

*Id.* at (T.36:20-37:4). And further:

> Dr. Dames - - and this is the most significant event to me, most significant of all - - Dr. Dames scheduled a series of listening sessions with STS parents on February 22 . . . she told parents, 'Don't post on the online petition.' Teachers were forbidden from posting on it. She told parents 'Don't make facebook posts.'

*Id.* at (T.82:14-83:2).

Furthermore, on the Church Defendants' April 2017 refusal to re-enroll S.P. and K.P., Judge Kessler ruled, "This Court cannot specifically enforce a contract, because there is no contract to enforce. Even if a contract could be found by a review of the 2016/2017 student handbook, no enforceable right for re-enrollment could be developed based on that agreement under the facts of this case. . ." *Id.* at (T.71:2-7).

The doctrine of collateral estoppel "proscribes re-litigation when the identical issue already has been fully litigated." *Board of Tr. of Trucking Employees of North Jersey Welfare Fund, Inc. v. Centra*, 983 F.2d 495, 505 (3d Cir. 1992). Under federal law, this applies when (1) the identical issue was decided in a prior adjudication, (2) there was a final judgment on the merits, (3) the party against whom the bar is asserted was a party or in privity with a party to the prior action, and (4) the party against whom the bar is asserted had a full and fair opportunity to litigate the subject issue. *Id.* (citing *Temple Univ. v. White*, 941 F.2d 201, 212 (3d Cir. 1991)). Importantly, the doctrine does not require the prior judicial decision to be on the ultimate issue of the prior litigation. *Id.* A final determination regarding a specific issue occurs when that narrow issue "is actually litigated and decided." *Id.* The standards under New Jersey law are largely the same. *Matter of Lymecare, Inc.*, 301 B.R. 662, 679 (Bankr. N.J. 2003). Collateral estoppel bars re-litigation of the same issues in suits that arise from different causes of action. *Id.* The factors favoring issue preclusion include the conservation of judicial resources, avoiding repetitious litigation, and prevention of waste, harassment, and inconsistency. *Id.* at 681.

Under the doctrine, a determination by a court of competent jurisdiction on an issue necessary to support its judgment is conclusive in subsequent suits based on a cause of action involving a party or one in privity with that party. *Delaware River P.A. v. Fraternal Order of Police*, 290 F.3d 567, 572 (3d Cir. 2002). "[o]nce an issue is actually and necessarily determined

by a court of competent jurisdiction, that determination is conclusive in subsequent suits based on a different cause of action involving a party to the prior litigation". *Montana v. U.S.*, 440 U.S. 147, 153 (1979). Issue preclusion "can avoid the costly litigation of issues already determined." *Delaware River P.A.*, 290 F.3d at 572. "In New Jersey, when a judgment of a court of competent jurisdiction determines a question in issue, the judgment estops the parties and privies from re-litigating the same issue in a subsequent proceeding." *Id.* at 573 (citing *City of Plainfield v. PSE&G Co.*, 82 N.J. 245, 257 (1980)). The federal courts look "to the law of the adjudicating state to determine its preclusive effect." *Id.*

Under New Jersey law, both legal and factual issues can be precluded by application of the doctrine. *Monek v. Borough of South River*, 354 N.J. Super. 442, 454 (App. Div. 2002). The party asserting issue preclusion needs to show (1) the issue to be precluded is identical to the issue decided in the previous proceeding; (2) the issue was actually litigated in the prior action, and there was a full and fair opportunity to do so; (3) a final judgment on the merits was issued in that prior proceeding; (4) the determination of the issue was essential to the prior judgment; and (5) the party against whom preclusion is asserted was a party to or in privity with a party to the prior proceeding. *Id.* at 454. The doctrine bars re-litigation of issues previously litigated and determined adversely to the party against whom it is asserted, *Barker v. Brinegar*, 346 N.J. Super. 558, 566 (App. Div. 2002), and is designed to protect litigants from re-litigating identical issues and to promote judicial economy. *Id.*

Moreover, to the extent Plaintiffs base contract claims in Counts Two, Three, and Seven on the STS Parent/Student Handbook, those claims fail. The Appellate Division has explicitly concluded that student handbooks do not create a contract or implied contract. *Romeo*, 378 N.J. Super. at 395. And in *Barker*, supra, this Court found it was doubtful New Jersey law permits a

16

binding contractual relationship to be founded on the provisions of a school handbook. 2016 WL 4571388, at *16 (citing *Romeo*, 378 N.J. Super. at 395; *Mittra v. Univ. of Medicine & Dentistry of N.J.*, 316 N.J. Super. 83, 91-92 (App. Div. 1998)).

In addition, this Court found no contractual duty was breached as those Catholic school defendants were granted discretion in disciplining the pupils in question. *Id.* The STS Handbook similarly empowers the officials of St. Theresa and STS. *See* Fenlon Decl., Exh. E (pp. 12-19). To survive dismissal, these Counts must set forth factual allegations, either direct or inferential, on each material element necessary to sustain recovery under an actionable legal theory. *Remco*, 814 F. Supp. at 174. Because they have plead nothing factually to satisfy each element of a valid breach of contract claim, Counts Two, Three, and Seven are fatally defective and fail as a matter of law. *Pyles*, 79 F. 3d at 1049. For these reasons, the Court should dismiss Counts Two, Three, and Seven for failure to state a claim.

Counts Two, Three, and Seven also purport to seek awards of punitive damages and/or for emotional injuries. It is well settled that no such damages are recoverable for breach of contract. "In contract actions there is ordinarily no recovery for punitive damages and pain and suffering." *Coyle v. Englander's,* 199 N.J. Super. 212, 219 (App. Div. 1985); see *Ellmex Const. Co. v. Republic Ins. Co.,* 202 N.J. Super. 195, 207 (App. Div. 1985); *Milcarek v. Nationwide Ins. Co.*, 190 N.J. Super. 358, 370 (App. Div. 1983). Moreover, the New Jersey Punitive Damages Act bars punitive damages in contract actions. *N.J.S.A.* 2A:15-5.15. Consequently, because Counts Two, Three, and Seven seek punitive damages and Count Seven seeks emotional injury damages, those claims should be dismissed as a matter of law, with prejudice.

## IV.   COUNT THREE OF THE COMPLAINT FAILS TO RAISE A COGNIZABLE CLAIM, AS THERE IS NO CAUSE OF ACTION UNDER ABBRA.

Count Three of the Complaint contends that the Church Defendants, by allegedly refusing to properly address issues raised by Plaintiffs (including concerning a social media based petition presented by individual citizens) and in expelling S.P. and K.P., violated New Jersey's Anti-Bullying Bill of Rights Act, *N.J.S.A.* 18A:37-13, *et seq.* ("ABBRA").  *See* Fenlon Decl., Exh. A (Complaint, p. 20).  This purported cause of action is frivolous and fails as a matter of law. ABBRA by its very terms applies only to New Jersey public schools and public school districts. *N.J.S.A.* 18A:37-31 dictates the statute is not applicable to non-public faith-based schools (like STS which is maintained and operated by Saint Theresa, a Catholic church and New Jersey religious corporation).  Fatal to this "claim" is the fact ABBRA also explicitly states it does not provide any private right of action, for it "does not create or alter any tort liability".  *N.J.S.A.* 18A:37-18.  Consequently, no civil cause of action for violation of ABBRA is cognizable or exists and Count Three fails as a matter of law.

In *Zelnick v. Morristown-Beard School*, 445 N.J. Super. 250 (App. Div. 2015) the Appellate Division found that ABBRA, "by its own terms, does not create tort liability", nor does it establish a standard of care.  *Zelnick*, 445 N.J. Super. at 265.  Further, two federal courts of this District have construed ABBRA and similarly concluded that alleged violations of the statute do not create liability in tort, nor do they support the imposition of such liability.  *K.J. v. Greater Egg Harbor Reg. High School District Board of Educ.*, 2015 WL 5039460 at *14 (D.N.J. August 26, 2015); *Thomas v. East Orange Board of Educ.*, 998 F.Supp.2d 338, 355 (D.N.J. 2014).

Thus, Count Three of the Complaint fails to state a claim and should, respectfully, be dismissed with prejudice as to all the Church Defendants.[2]

## V.   BECAUSE THERE IS NO VALID CONTRACT, PLAINTIFFS HAVE NO CLAIM FOR BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING.

New Jersey recognizes a cause of action for a breach of the covenant of good faith and fair dealing, which is implied in every valid contract. *See Wilson v. Amerada Hess Corp.*, 168 N.J. 236, 245 (2001). The implied covenant prohibits one party to a contract from doing anything that will have the effect of destroying or injuring the right of the other party to receive the fruits of that contract. *Sons of Thunder, Inc. v. Borden, Inc.*, 148 N.J. 396, 420 (1997). However, in the absence of the existence of a valid contract, there can be no breach of the implied covenant. *Noye v. Hoffmann-La Roche Inc.*, 238 N.J. Super. 430, 434 (App. Div. 1990). The Supreme Court has specifically rejected, as unsupportable, any claim that a breach of the implied covenant arises absent an express or implied-in-fact contract. *See Wade v. Kessler Institute*, 172 N.J. 327, 345 (2002).

Plaintiffs allege in Count Four that the Church Defendants, by failing to address their grievances and expelling K.P. and S.P., violated ABBRA and/or breached "the provisions of the STS Handbook which includes breach of the duty of good faith and fair dealing." *See* Fenlon, Decl., Exh. A (Complaint, p. 21). Thus, this Count baldly and conclusorily alleges violation of ABBRA, breach of contract, and breach of the implied covenant. The precept that factual allegations are to be accepted by the Court for purposes of a Rule 12(b)(6) motion, does not extend to such bald assertions or legal conclusions. *DM Research*, 170 F. 3d at 55.

---

[2] To the extent Count Three is found to also assert a breach of contract claim against the Church Defendants, it fails to state a valid claim and should be dismissed, for the same reasons stated herein.

More importantly, to defeat the Church Defendants' motion, this Count must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. *Iqbal*, 129 S. Ct. at 1949.  Plaintiffs' claim in Count Four is fatally defective and should be dismissed, because it omits any factual allegations on the specific contract alleged to be breached, and the provisions relied upon.  Failure to allege specific provisions of the contract in question is grounds for dismissal. *Barker*, 2016 WL 4571388 at *15.  The Count contains no factual recitation of the elements of a cause of action for breach of the implied covenant, including no contentions on how the Church Defendants' action would have the effect of destroying or injuring the Plaintiffs' right to receive the fruits and benefits of any contract or as to the wrongful conduct purportedly engaged in by the Church Defendants.  The New Jersey courts do not permit allegations of bad faith or unfair dealing to be advanced in the abstract or absent allegations of improper motive. *Wade*, 172 N.J. at 341.  Consequently, Count Four fails to state a claim upon which relief may be granted.  Further support is found in the fact that ABBRA as a matter of law is statutorily inapplicable to private religious schools and institutions.

## VI.   COUNTS FIVE AND SIX OF THE COMPLAINT FAIL TO STATE ACTIONABLE CLAIMS OF DEFAMATION AND THEY ARE BARRED BY THE APPLICABLE STATUTE OF LIMITATIONS.

### A.   The Statute of Limitations Bars Plaintiffs' Defamation Claims (except as to the Archdiocese's August 14, 2017 Press Release).

The Plaintiffs were required to bring any claims for defamation within one (1) year of the publication of the allegedly defamatory statement(s).  "Every action at law for libel or slander shall be commenced within 1 year next after the publication of the alleged libel or slander." *N.J.S.A.* 2A:14-3.  Where a defamation complaint is not filed within one (1) year of the

publication asserted therein, the claim is "properly dismissed with prejudice as time-barred." *Swan v. Boardwalk Regency Corp.*, 407 N.J. Super. 103, 122-23 (App. Div. 2009).

In the largely incoherent pleading in issue, Plaintiffs appear to raise claims for defamation grounded in asserting they were disparaged in a Petition (created in or about February 17, 2017 with the last comment thereto dated February 27, 2017)[3], and in a series of Archdiocese press releases dated February 2, 2017, March 22, 2017, June 29, 2017, June 30, 2017, and August 14, 2017. *See* Fenlon Decl., Exhs. I, J, K, L and M. Counts Five and Six fatally contain no allegations or recitations therein as to the specific statements or comments alleged to be defamatory. *Id.* at Exh. A. Plaintiffs filed this Complaint in New Jersey Superior Court on July 2, 2018. Consequently, it is beyond dispute that the one (1) year Statute of Limitation ("SOL") has run as to all the alleged defamatory statements, except the August 14, 2017 press release. Assuming *arguendo* the SOL has not run, none of the alleged statements are actionable or defamatory and Plaintiffs have failed to properly plead a defamation cause of action.

"New Jersey follows the single publication rule for mass publications under which a plaintiff alleging defamation has a single cause of action, which arises at the first publication of an alleged libel, regardless of the number of copies of the publication distributed or sold." *Churchill v. State,* 378 N.J. Super. 471, 478 (App. Div. 2005). This is particularly important in the context of the internet, as concerning the online Petition and comments thereto. New Jersey applies the "single publication" rule to internet postings. *Id.* at 482-83. Thus, the SOL ran for the Petition (as it was first posted on or about February 17, 2017) over four months before the

---

[3]   As to the Petition, Judge Kessler found that not  only did the Church Defendants have nothing to do with it, they actively tried to stop online comments related thereto. *See* Fenlon Decl., Exh. B, (Plenary Hearing Op., T. 36:7 to 39:18).

Complaint was filed. No matter how many times it was recreated or disseminated thereafter, the date of accrual remains the same. *Swan*, 407 N.J. Super. at 122-23.

### B.    Counts Five and Six are Fatally Defective and Fail to State Claims.

A defamation plaintiff is required to assert sufficient acts to identify the defamer, the circumstances of publication, and the alleged defamatory statements themselves. *Printing Mart-Morristown v. Sharp Elecs. Corp.*, 116 N.J. 739, 767 (1989); *Zoneraich v. Overlook Hosp.*, 212 N.J. Super. 83, 101 (App. Div. 1986).   In Counts Five and Six Plaintiffs do no more than conclusorily assert the Church Defendants' alleged refusal to address their grievances to their liking, and claim they were disparaged by the expulsion of S.P. and K.P.  Plaintiffs claim all other Defendants posted, commented on, or drafted the Petition which disparaged them with false facts, and there were false and disparaging statements in them that were defamatory. *See* Fenlon Decl., Exh. A (Complaint, pp. 21-23).   Counts Five and Six do not, as a matter of law, state viable causes of action.   First, Plaintiffs abjectly failed to identify the specific statements made by specific Defendants that were false and defamatory, and did not identify their means of publication.   Without sufficient allegations of those necessary elements, their claims for defamation must be dismissed.   Furthermore, per Rule 9(f), the required special damages contentions as stemming from reputational harm have not been plead with particularity.

New Jersey follows the *Restatement (Second) of Torts* (1977) regarding defamation claims.  *DeAngelis v. Hill*, 180 N.J. 1, 12 (2004).   The elements of defamation are "(1) the assertion of a false and defamatory statement concerning another; (2) the unprivileged publication of that statement to a third party; and (3) fault amounting at least to negligence by the publisher." *Id.* at 13 (quoting *Restatement (Second) of Torts* (1977)).   When the statements regard a public official or come within the realm of public concern, New Jersey courts apply the

"actual malice" standard. *Senna v. Florimont*, 196 N.J. 469, 496 (2008). When the statements involve a matter of public concern or public figure, element three requires fault amounting to actual malice by the speaker. *Id.*

The law requires that a defamation suit must "achieve a balance between protecting reputation and protecting free speech." *Rocci v. Ecole Secondaire Macdonald-Cartier*, 165 N.J. 149, 155 (2000). Speech that implicates public concern operates inside the highest rung of First Amendment protection, the maximum protection afforded under the law. *Id.* at 155-56. If an alleged defamatory statement touches upon a public concern, "the interests of free speech justify, and fairness to individual reputation permits, application of a strict and high burden of proof to establish actionable defamation." *Sisler v. Gannett Co., Inc.*, 104 N.J. 256, 275 (1986).

The key question before this Court in assessing whether a matter of public concern is present deals with "whether the person voluntarily and knowingly engaged in conduct that one in his position should reasonably know would implicate a legitimate public interest, engendering the real possibility of public attention and scrutiny." *Dairy Stores, Inc. v. Sentinel Pub. Co., Inc.*, 104 N.J. 125, 144 (1986). It is not unfair to favor free speech over the reputational harm of an individual when that person "voluntarily and knowingly engaged in conduct that one in his position should reasonably know would implicate a legitimate public interest, engendering the real possibility of public attention and scrutiny." *Sisler*, 104 N.J. at 274. The individual may not seek the publicity, but when he willingly and knowingly engages in conduct which creates a risk of attention, that individual has relinquished part of his reputation to the public. *Id.*

Consequently, the test is "when a private person with sufficient experience, understanding and knowledge enters into a personal transaction or conducts his personal affairs in a manner that one in his position would reasonably expect implicates a legitimate public interest with an

attendant risk of publicity, defamatory speech that focuses upon that public interest will not be actionable unless it has been published with actual malice." *Id.* at 279. The New Jersey Courts have identified education as a matter of public concern which involves the public welfare. *Dairy Stores,* 104 N.J. at 144. Other matters the Court has concluded occupy the public realm include areas subject to state regulation. *Id.*

The "actual malice" standard applies to public concerns and/or public figures. "The actual malice standard will apply when the alleged defamatory statement concerns a public figure or a public official or involves a matter of public concern." *Senna,* 196 N.J. at 496. "A public figure may recover for injury to reputation only on clear and convincing proof that the defamatory falsehood was made with knowledge of its falsity or with reckless disregard for the truth." *Berkery v. Kinney,* 397 N.J. Super. 222, 227 (App. Div. 2007).

People can be deemed to be public figures for a limited purpose. "A person is a public figure for all purposes when he has achieved "pervasive fame or notoriety" **or for limited purposes when he voluntarily injects himself or is drawn into a particular public controversy.**" *Senna*, 196 N.J. at 484, n.9 (emphasis added); *see Berkery v. Estate of Stuart*, 412 N.J. Super. 76, 86 (App. Div. 2010).

Therefore, by inviting attention and public comment the Plaintiffs are subjected to the "actual malice" standard. *Berkery,* 397 N.J. Super. at 227, 229 (citing *Sisler,* 104 N.J. at 279). Furthermore, even where a plaintiff is considered a private figure not a public figure, "actual malice" must still be shown if the action in question concerns the public interest. *Id.*

Where the statements in question are of public concern, statements of opinion and statements of fact are regarded equally. *Dairy Stores,* 104 N.J. at 147. However, the difference between opinion and fact is critically important because opinions, no matter how pernicious,

enjoy absolute immunity. *Id.* Matters of pure opinion can never give rise to a defamation action. *Id.* "Succinctly stated, a pure opinion is one that is based on stated facts or facts that are known to the parties or assumed by them to exist." *Id.* "By comparison, a 'mixed' opinion is one that is not based on facts that are stated or assumed by the parties to exist." *Id.* at 147-48. In determining the difference between fact and opinion, Courts look to the content of the statement, the context in which it appeared, and the manner in which the words were used. *Id.* at 148.

New Jersey law requires a defamation plaintiff to offer some concrete proof of a reputational injury and damages. *Sisler*, 104 N.J. at 281. Concrete proof can be demonstrated by a showing "that an existing relationship has been seriously disrupted, reflecting the idea that a reputation may be valued in terms of relationships with others" or through the testimony of third parties. *Id.* "Awards based on a plaintiff's testimony alone or on 'inferred' damages are unacceptable." *Id.* "Within that context, a plaintiff asserting a defamation claim cannot rely on the doctrine of presumed damages absent a finding that the defendant published the statement with knowledge that it was false or with reckless disregard of whether it was false or not." *Rocci*, 165 N.J. at 156.

> True statements are absolutely immune and absolutely protected under the First Amendment. *Ward v. Zelikovsky*, 136 N.J. 516, 530 (1994) (citing *2 Fowler v. Harper et al., The Law of Torts* § 5.1, at 42 (2d ed. 1986) (stating "[T]he law makes truth a defense ... because the utterance of truth is in all circumstances an interest paramount to reputation.")).

Truth is not only a common law defense, but also "absolutely protected under the First Amendment . . . Truth may be asserted as a defense even when a statement is not perfectly accurate." *G.D. v. Kenny,* 205 N.J. 275, 293 (2011). "The law of defamation overlooks minor inaccuracies, focusing instead on 'substantial truth.'" *Id.* Furthermore, Plaintiffs bear the burden of demonstrating any alleged defamatory statements about them were false. *Id.* at 304.

In *Rocci*, a school teacher stayed out late drinking with students on a European tour. *Rocci*, 165 N.J. at 153. Another teacher wrote a letter complaining that such conduct was unprofessional. *Id.* The accused teacher brought a defamation suit, which was dismissed on summary judgment for failure to show identifiable harm. *Id.* at 154. On appeal, the Supreme Court held the case should have been dismissed because the American school teacher failed to plead any facts demonstrating actual malice. *Id.* at 152. Actual malice was required because it involved a matter of public concern, *i.e.,* the conduct of a school teacher around her students. *Id.*

In *G.D.*, plaintiff was convicted of possession of cocaine with intent to distribute, but had that record expunged. *G.D.*, 205 N.J. at 284. After plaintiff's release from prison, he went to work for a politician, Brian Stack. *Id.* Several years later, Stack sought the Democratic nomination for state senator. *Id.* at 285. His opponent ran several ads targeting him for allegedly hiring ex-cons, gang members, and drug dealers to work for him. *Id.* One statement identified the plaintiff by name, "[G.D.] is also a DRUG DEALER who went to JAIL for FIVE YEARS for selling coke near a public school. After getting out of jail, [G.D.] landed a job as a highly paid "aide" to Mayor Stack." *Id.* at 286. G.D.'s defamation action was dismissed because the Court found the truth of the statements relating to his prior drug convictions were an absolute defense, notwithstanding their later expungement. *Id.* at 304.

In this case, the Church Defendants' motion to dismiss must be decided under the standards governing questions of public concern, here the education of children. As the Supreme Court found, areas of public concern include the areas of education and topics covered by state regulation. *Dairy Stores,* 104 N.J. at 144.

Moreover, the Plaintiffs voluntarily and willingly became public figures. *See* Fenlon Decl., ¶10. Almost every stage of the Superior Court Action prompted another round of local

and national media coverage – which the Plaintiffs not only encouraged, but deliberately sought out. *Id.* Even S.P. and K.P. conducted interviews and posed for news photos and videos. Judge Kessler ruled Phillips thrust himself, his children, and this matter into the press. *See* Fenlon Decl., Exh. B (Plenary Hearing Op., T.28:9-29:3; 75:20-23; T.79:7-13) ("There was an airing out of this matter in the press making very public, which was contrary to the faith-based purpose of this school educating Catholic youth"); ("Mr. Phillips made the decision he had an interesting human interest story and he wanted his side to get out publically. . ."). The law is clear that Plaintiffs became at minimum limited public figures, for they sought the publicity, and they willingly and knowingly engaged in conduct which created a risk of attention. Thus, they relinquished part of their reputations to the public. *Sisler*, 104 N.J. at 274. Because the Plaintiffs are viewed as public figures for the purposes of their defamation claims, they were required to allege and prove "actual malice" in Counts Five and Six and failed to do so.

Facial review of the Archdiocese's subject press releases demonstrates they contain no defamatory statements whatsoever. *See* Fenlon Decl., Exhs. I, J, K, L and M. With regard to the February 2, 2017, March 22, 2017, and June 29, 2017 Archdiocese Press Releases, Judge Kessler concluded those documents contained no defamatory comments and were aimed at informing the Catholic Faithful how the Church Defendants would defend themselves. *Id.* at Exh. B (Plenary Hearing Op., T.42:17-45:1; 80:11-15). Plaintiffs may dislike the commentary therein, but no legally actionable statements were asserted in them.

## VII. BECAUSE COUNT EIGHT FAILS TO RAISE ANY COGNIZABLE CLAIMS AND IS BARRED BY THE LITIGATION PRIVILEGE, IT IS SUBJECT TO DISMISSAL.

Count Eight of the Complaint alleges the Archdiocese, St. Theresa, and STS as employers of Mr. Donovan and/or Mr. Bui, and Mr. Donovan and/or Mr. Bui individually, "provided false

sworn testimony, acted in bad faith and perpetrated a fraud on the trial court in an effort to prevent S.P. from playing basketball." *See* Fenlon Decl., Exh. B (Complaint, p. 24). As a result, the Plaintiffs allege S.P. suffered and continues to suffer emotional injuries and damages of a temporary and permanent nature. *Id.* This Count specifically targets the Archdiocese, St. Theresa, STS, Mr. Donovan and Mr. Bui, and not the other Church Defendants.

To the extent it purports to assert a claim of legal fraud, Count Eight fails to state a claim. To establish a *prima facie* case of legal fraud, the Plaintiffs were obligated to particularly allege the following elements: (1) a material misrepresentation of a presently existing or past fact; (2) knowledge or belief of its falsity; (3) an intention by the defendant that another rely thereon; (4) reasonable reliance thereon by Plaintiffs; and (5) damages proximately resulting from the alleged misrepresentation. *Gennari v. Weichert Co. Realtors*, 148 N.J. 582, 610 (1997). In addition, they must allege scienter on the part of these Defendants, meaning their knowledge of the falsity of the alleged representations with the specific intent the Plaintiffs rely thereon. *Nappe v. Anchelewitz, Barr, Ansell & Bonello*, 97 N.J. 37, 52 (1984). Under New Jersey law, allegations of fraud must be proven by clear and convincing evidence. *Alexander v. Cigna Corp.*, 991 F. Supp. 427, 435 (D.N.J.), *aff'd. o.b.*, 172 F.3d 859 (3d. Cir. 1998); *Simpson v. Wigder*, 311 N.J. Super. 379, 392 (App. Div. 1998). Count Eight is legally defective and insufficient to state a valid cause of action for fraud, because it contains no allegations whatsoever on any of the five necessary elements. Any purported fraud claim in this Count is legally inadequate because the Plaintiffs have not pled a claim with the particularity required by Rule 9(b). That Rule provides defendants notice of the claims against them and an increased measure of protection for their reputations and reduces the number of frivolous suits brought solely to extract settlements, *In re: Burlington Coat Factory Security Litigation*, 114 F. 3d 1410, 1418 (3d Cir. 1997), and requires

28

plaintiffs to plead with particularity the facts supporting each of the elements of fraud. *Id.* To satisfy Rule 9(b), the Plaintiffs must offer some precision and measure of factual substantiation. *Gutman v. Howard Savings Bank*, 748 F. Supp. 254, 257 (D.N.J. 1990). As a matter of law, Count Eight fails to state a fraud claim upon which relief may be granted.

Furthermore, no cognizable civil causes of action exist under New Jersey law for (a) providing false testimony, (b) acting in bad faith, or (c) perpetrating an alleged fraud on a court of competent jurisdiction. Thus, Count Eight also fails to state a valid claim. The duty of candor to a tribunal is set forth in Rule of Professional Conduct 3.3. While attorneys have the ethical obligation to abide by this RPC, no jurisdiction, including New Jersey, has ever authorized a civil claim based solely on an alleged RPC violation. *Baxt v. Liloia*, 155 N.J. 190, 198 (1998). No such action has been adopted because New Jersey's ethical rules "are not designed to be a basis for civil liability" and are intended solely to "provide guidance for lawyers and to provide a structure for regulating conduct through disciplinary agencies." *Id.* at 197 (*quoting Model Rules of Professional Conduct*, Scope (1992)). Our disciplinary rules are "designed to protect the public and the integrity of the profession", not the interests of individual litigants. *Id.* at 202. Because the purported causes of action raised for acting in bad faith, fraud on the court or breach of a duty of candor to a court do not legally exist, Count Eight fails.[4]

To the extent Count Eight purports to assert a claim for alleged provision of "false sworn testimony" in the Superior Court Action, it fails as no such cause of action exists. The New Jersey courts are loathe to imply civil remedies from penal statutes, including the perjury and false swearing statutes, *N.J.S.A.* 2C:28-1(a-e) and 2C:28-2(a-b). *Trustees of Local 478 Pension*

---

[4]   Incidentally, the Church Defendants strenuously deny that any false information was knowingly or intentionally provided, and that any RPC violation was committed at any time in the Superior Court Action or in related actions.

*Fund v. Pirozzi*, 198 N.J. Super. 297, 308 (Law Div. 1983), *aff'd per curiam*, 198 N.J. Super. 318 (App. Div. 1984).  In the New Jersey Code, the titles of statutes operate as a limitation on the enacting clauses, and require rejection of any construction giving a particular statute a direct effect beyond the object expressed therein.  *Plevy v. Schaedel*, 44 N.J. Super. 450, 453 (Law Div. 1957) (quoting *Wasserman, Inc. v. Klahre*, 24 N.J. Super. 143, 147 (App. Div. 1952)).

New Jersey's criminal statutes must be strictly construed and it is settled that civil remedies in damage claims are not created by those laws.  *Plevy*, 44 N.J. Super. at 454-55.  New Jersey's perjury and false swearing statutes, *N.J.S.A.* 2C:28-1 and -2, neither expressly nor implicitly authorize private actions for damages based on the conduct proscribed therein. "Where legislative intent does not expressly authorize an action, the Legislature neither intended to create such a cause of action by silence, nor desired the judiciary to create one by implication." *I.J. v. I.S.*, 328 N.J. Super. 166, 176 (Ch. Div. 1999).  Indeed, the absence of any explicit provision for a civil damages remedy is indicative, in and of itself, of the Legislature's intention not to permit such a civil remedy.  *Pirozzi*, 198 N.J. Super. at 313.

Governing case law demonstrates the Plaintiffs' purported private claims raised in Count Eight have never been authorized by the New Jersey courts and Count Eight therefore fails as a matter of law and should be dismissed with prejudice as to all Church Defendants.  In addition, that Count fails because the certifications submitted by Mr. Donovan and Mr. Bui in the Superior Court Action are fully protected by the absolute immunity afforded by the litigation privilege. The privilege provides jurors, witnesses, parties, and their representatives absolute immunity with respect to "statements, even those defamatory and malicious, made in the course of proceedings before a court of justice and having some relation thereto. . . ." *Hawkins v. Harris*, 141 N.J. 207, 214 (1995).  The privilege has long been extended to apply to tortious conduct:

> If the policy, which in defamation actions affords an absolute privilege or immunity to statements made in judicial and quasi-judicial proceedings is really to mean anything then we must not permit its circumvention by affording an almost equally unrestricted action under a different label.

*Peterson v. Ballard*, 292 N.J. Super. 575, 582 (App. Div. 1996) (*quoting Rainier's Dairies Raritan Valley Farms*, 19 N.J. 552, 564 (1955)).

The privilege stems from the policy conclusion that those who are engaged in litigation, are called as witnesses, or asked to investigate claims, should be permitted to speak and write freely without fear of suit, because that freedom is indispensable to the due administration of justice. *Durand Equip. Co. v. Superior Carbon Prods.*, 248 N.J. Super. 581, 584 (App. Div. 1991). The litigation privilege is intended to be construed broadly and applies to "any communication (1) made in judicial or quasi-judicial proceedings; (2) by litigants or other participants authorized by law; (3) to achieve the objects of the litigation; and (4) that have some connection or logical relation to the action." *Hawkins*, 141 N.J. at 216.

Even statements which are actually known to be false when made, or made with malicious intent, are fully protected. "This absolute immunity is afforded even if the words are written or spoken maliciously, without any justification or excuse, and from personal ill will or anger against the party defamed." *Durand*, 248 N.J. Super. at 583-84. Because all statements made by clients in connection with or relating to a judicial proceeding are absolutely privileged, any allegations of falsity in those statements are of no importance (except to the extent the privilege does not protect attorneys from professional discipline for any proven unethical conduct). *Hawkins*, 141 N.J. at 215. So long as the statements were in any way related to the subject legal proceeding, they are protected and immune. *Id.*, 141 N.J. at 219.

31

Because the privilege applies unquestionably in this case, it protects the speaker absolutely, "making the speaker 'wholly immune' from liability." *Thomas v. Ford Motor Co.*, 137 F.Supp.2d 575, 581 (D.N.J. 2001). Whether the litigation privilege applies is a question of law for this Court to decide. *Id.* at 582 (citing *Hawkins*, 141 N.J. at 216). The absolute immunity protects attorneys and their clients against tort actions based upon any utterances made in the course of a judicial proceeding and bearing some relation thereto. *Petty v. General Accident Fire & Life Assur. Corp.*, 365 F.2d 419, 421 (3d Cir. 1966).

In *Durand, supra*, a defendant in a civil action was sued by a convict and his wife for allegedly providing false testimony and documents which ultimately led to plaintiff's conviction in federal court. *Durand*, 248 N.J. Super. at 583. The Appellate Division held the defendant was entitled to summary judgment as a matter of law because he was protected by absolute immunity of the privilege. *Id.* at 587.

Count Eight purports to assert a civil claim for fraud purportedly based on the conclusory allegations that Mr. Donovan and Mr. Bui "provided false sworn testimony, acted in bad faith on the Court in an effort to prevent S.P. from playing basketball", in connection with certifications they presented to Judge Kessler in the Superior Court Action. The Church Defendants' actions in presenting the subject two employee or agent certifications in the Superior Court Action in the defense of the Plaintiffs' action were absolutely privileged and immunized from any liability.

## VIII.   COUNT NINE OF THE COMPLAINT FAILS TO STATE CLAIMS UPON WHICH RELIEF MAY BE GRANTED FOR NEGLIGENCE AND NEGLIGENT AND INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS.

Count Nine of the Complaint contains only conclusory and formulaic allegations of negligence and any negligence claim is barred by the Charitable Immunity Act ("CIA"). *See*

Fenlon Decl., Exh. A (Complaint, pp. 24-28).   In addition, Count Nine fails to allege separate and distinct stand-alone claims of intentional infliction of emotional distress ("IIED") or negligent infliction of emotional distress ("NIED") against the Church Defendants, and instead simply inserted those terms in the Count's *ad damnum* clause.  *Id.*

### 1.    Plaintiffs' Negligence Claim Fails to State a Claim Upon Which Relief May Be Granted.

In New Jersey, it is settled "that a negligence cause of action requires the establishment of four elements: (1) a duty of care, (2) a breach of that duty, (3) actual and proximate causation, and (4) damages." *J.C.P. & L. Co. v. Melcar Utility Co.*, 212 N.J. 576, 594 (2013).  Actionable negligence involves the breach of a legal duty and resulting damage and "it must be shown that there was a causal connection between that breach of duty and the plaintiff's alleged damages". *Stanley Co. of America v. Hercules Powder Co.*, 16 N.J. 295, 315 (1954).  Count Nine contains solely formulaic recitations of the elements of the existence of a duty, the named Church Defendants' alleged breach of that duty, and that Plaintiffs allegedly suffered emotional distress therefrom.  *See* Fenlon Decl., Exh. A.  Count Nine lacks specific factual allegations as to each requisite element of a negligence cause of action or sufficient factual matter, if accepted as true, that its claim to show relief is plausible on its face.  *Iqbal*, 129 S.Ct. at 1949.  This Count is also insufficient as it tenders naked assertions to void a further factual enhancement, as required.  The claim fails to the extent it is premised on the provisions of ABBRA which does not apply to private faith-based educational facilities and because that statute creates no tort liability, nor does it establish any standard of care. *Zelnick*, 445 N.J. Super. at 569.

The Plaintiffs' purported claims of negligence and NIED are barred by New Jersey Charitable Immunity Act, *N.J.S.A.* 2A53A-7 to 11 (the "CIA").  The CIA has traditionally been

liberally constructed.   The test used to determine beneficiary status is whether the institution pleading the immunity was engaged in the performance of the religious charitable or educational objectives it was organized to advance.   *Loder v. St. Thomas Greek Orthodox Church*, 295 N.J. Super. 297, 303 (App. Div. 1996).

In *Gray v. St. Cecilia School*, 217 N.J. Super. 492 (App. Div. 1987), the Appellate Division reviewed the trial court's summary judgment in favor of defendants.   The issue concerned whether the plaintiff mother (injured at her son's Catholic school when she picked him up after school) was a beneficiary of the school's charitable works of the time of the accident.   The Court concluded plaintiff clearly was a beneficiary and the CIA barred her negligence claim.   It was undisputed she was on the premises solely to transport her son home from school, she and her son were Catholics, the defendants qualified as non-profit religious and educational organizations for purposes of the CIA, and her son was a student of the subject school, also a beneficiary of their charitable works.   *Gray,* 270 N.J. Super. at 493-94.   The Court cogently concluded plaintiff's presence at the school "was clearly incident to accomplishment of a purpose of her own, to ensure that her child should receive the benefits of a Catholic school education, rather than a secular education otherwise provided by government."   *Id.* at 495.   She was not "unconcerned in", "unrelated to", or "outside" the benefaction of that Catholic school and Diocese which provided the location and means to accomplish her purpose, securing a Catholic education for her child.   Thus, the CIA clearly applied.   *Id.*

To overcome the CIA's bar, a plaintiff must prove that he was totally unconcerned in, unrelated to, and outside the benefactions of the charitable organization in question.   *Smith v. Diocese of Camden Annunciation Sch.*, 2009 WL 1531679 at *2 (N.J. App. Div. June 3, 2009).   In *Smith*, the plaintiff was at the subject Catholic school to deliver treats to her child's class for

an Easter celebration. As she walked back to her car, she was struck by a container and injured. *Id.* at *1. Because her child was a student, plaintiff was an indirect beneficiary of the school's benefactions and charitable works and thus benefitting from her child's attendance at the school, which was serving its intrinsically charitable functions. *Id.* at *2-3.

A high school or primary school operating under the auspices of a Catholic diocese meets the CIA's criteria for charitable immunity, *i.e.*, that the entity was formed for non-profit purposes, organized exclusively for religious, charitable, and/or educational purposes, and was promoting such objectives and purposes at the time of the injury to plaintiff who was a beneficiary of the charitable works. *Hehre v. DeMarco*, 421 N.J. 501, 507 (App. Div. 2011). All that is necessary to be a beneficiary is that plaintiff was in some way benefiting from the institution's functions in a religious or educational undertaking. Plaintiff was clearly a beneficiary of the high school's charitable activities in *Hehre*, because the student agreed to drive the plaintiff and two other teammates in his parents' vehicle to a school track meet when the accident occurred. *Id.* at 506-08. Moreover, it is well settled the CIA applies not only to the religious and educational entities themselves, but also to any individually named school or entity officials, employees, agents, servants, and volunteers. *Id.* at 510. For these reasons, the Plaintiffs' alleged claims for negligence and NIED asserted against the Church Defendants fail as a matter of law and should be dismissed with prejudice.

**2.    Any IIED Claim Raised In Count Nine Fails To State a Claim.**

The Church Defendants move to dismiss Count Nine because no viable IIED Claim is asserted. No cause of action is articulated as Plaintiffs simply inserted the term "Negligent and Intentional Infliction of Emotion Distress" in the *ad damnum* clause. *See* Fenlon Decl., Exh. A. To allege an IIED claim, Plaintiffs had to allege that intentional and outrageous conduct was

committed, which proximately caused them to suffer severe emotional distress. *Buckley v. Trenton Saving Fund Society*, 111 N.J. 355, 366 (1988). They failed to allege the named Defendants acted intentionally or recklessly. *Id.* For an intentional act to result in liability, a defendant must intend both to do the act and to produce emotional distress. *Id.*

Second, to be viable, an IIED claim must assert that the defendant's conduct was "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized community." *Id.* Such a claim must further allege the defendant's actions proximately caused the plaintiffs' emotional distress and that the emotional distress was so severe no reasonable person could be expected to endure it. *Id.* The Court "decides whether as a matter of law such emotional distress can be found, and the jury decides whether it has in fact been proved." *Id.* at 367.

On the element of severe emotional distress, to sustain any IIED claim, Plaintiffs are required to allege and provide corroborating medical proof or evidence of physical or psychological symptoms that they suffered. *See Turner v. Wong*, 363 N.J. Super. 186 (App. Div. 2003). Here, Count Nine fails to allege any of the requisite elements.

There being no allegations whatsoever as to a claim of IIED, Count Nine is fatally defective and fails to state a claim for IIED.

### 3.    Any NIED Claim Raised In Count Nine Fails To State A Claim.

Again, Count Nine improperly purports to raise a NIED claim by simply inserting that term into its *ad damnum* clause. *See* Fenlon Decl., Exh. A. Because the Count contains none of the allegations required, it fails as a matter of law. Plaintiffs' NIED claim also fails because it facially does not fall within the highly limited categories where NIED claims have been permitted under New Jersey law.

"A claim of direct, negligent infliction of emotional distress requires a plaintiff to show that the defendant had a duty, the defendant owed the duty toward the plaintiff, and that the defendant breached that duty, proximately causing the plaintiff's injury of genuine and substantial emotional distress." *Lascurain v. City of Newark*, 349 N.J. Super. 251, 277 (App. Div. 2002). The question whether a defendant owes a duty of care to the plaintiff "depends on whether it was foreseeable that the plaintiff would be seriously, mentally distressed." *Id.* To the extent that Count Nine purports to assert an NIED claim as to the other Plaintiffs beside S.P., those claims fail as a matter of law because it fails to satisfy the requirements for recognized causes of action for NIED which as to bystanders are limited to accidents causing death or grievous injury, medical malpractice committed in the presence of the plaintiff, or cases involving loss of a corpse or desecration of a grave. *See Ahn v. Kim*, 145 N.J. 423, 435 (1996).

Count Nine is factually defective as to S.P. and should be dismissed because none of the requisite elements are fully and properly set forth. To state a viable NIED claim, this Court must determine that any of the Church Defendants owed a duty of care to S.P., which must be analyzed in terms of foreseeability. *Decker v. Princeton Packet, Inc.*, 116 N.J. 418, 429 (1989). The imposition of such "liability should depend on the defendants foreseeing fright or shock severe enough to cause substantial injury in a person normally constituted." *Id.* (quoting *Kaputzal v. The Lindsay Co.*, 48 N.J. 69, 76 (1966)). Foreseeability of injury is particularly critical in assessing any claim for NIED. *Id.* In such cases, New Jersey Courts have expressed a constant concern about the genuineness of such claims. *Id.* at 430.

Here, the conclusory allegation is that the named Church Defendants owed S.P. a duty of care to provide a safe learning environment free from harassment, intimidation, and bullying, and breached that duty by failing to protect her from harm by failing to respond to facts that they

were aware and told concerning alleged bullying suffered by S.P. at STS. *See* Fenlon Decl., Exh. A (Complaint, pp. 24-25). Any contention that the Church Defendants owed S.P. a duty that she would suffer fright or shock severe enough to cause her to suffer substantial emotional distress and mental harm, arising from her status as a student of STS and her day to day interactions with classmates in that private Catholic elementary school is a duty that, as a matter of law, this Court should conclude does not exist. Because there is no such duty, the claim fails.

In *Zelnick*, the Appellate Division found there was no legal authority to support the proposition that the private school defendants in that case owed the parents in question any duty of care. *Zelnic*, 445 N.J. Super. at 266-67. In that case, the Court further concluded there was no legal New Jersey authority creating an implied "safe learning environment" term in any scholastic enrollment agreement. *Id.* at 261-62.

The plaintiffs' claims in this regard are barred by the Doctrine of Issue Preclusion/Collateral Estoppel insofar as Judge Kessler found that Phillips and Mullen as parents were not entitled to a hearing under the STS handbook or that expulsion of children based on parental conduct is reviewable or requires due process and that there was "certainly a fair hearing of the Phillips family grievances." *See* Fenlon Decl., Exh. B (Plenary Hearing Op., T.89:8 to 91:2). Phillips and his wife were able to talk to people at all levels in connection with their grievances. Plaintiffs' "claims" are based on their views everything was not done to their satisfaction, "there's a suggestion if it's not the plaintiffs' way, it is not the right way and that's not the way any institution has to operate." *Id.* at (T.78-14 to 78-18). The Court further ruled that Plaintiffs' claims that the school had not addressed their arguments regarding sexual comments, alleged harassment and bullying and intimidation had been resolved by the Church Defendants "albeit not to Mr. Phillips and Ms. Mullen's satisfaction." *Id.* at (T.13:1 to 20:25;

44:16 to 4:16; 78:14 to 78:18).  And that the Plaintiffs' 2016 issues "were resolved as to sexual misconduct and bullying thus plaintiffs' position, to the extent that it raises these issues time and again, seems to serve little purpose." *Id.* at (T.57-6 to 57-20).

Where IED or NIED claims are predicated on conduct or claims which fail as a matter of law, those claims similarly fail. *See G.D. v. Kenny*, 205 N.J. 275, 307 (2011).

## IX.  BECAUSE THE CHURCH DEFENDANTS ARE EXEMPT FROM THE CFA, COUNT TEN MUST BE DISMISSED.

Count Ten fails to state a claim for consumer fraud under the New Jersey Consumer Fraud Act, *N.J.S.A.* 56:8-1, *et seq.* ("CFA").  Because claims under the CFA are fraud claims, they are required to "be pled with specificity to the extent practicable." *Hoffman v. Hampshire Labs, Inc.,* 405 N.J. Super. 105, 112 (App. Div. 2009).  Rule 9 imposes a similar requirement.

"To prevail on a CFA claim, a plaintiff must establish three elements: '1) unlawful conduct by defendant; 2) an ascertainable loss by plaintiff; and 3) a causal relationship between the unlawful conduct and the ascertainable loss.' " *Zaman v. Felton*, 219 N.J. 199, 222 (2014) (quoting *Bosland v. Warnock Dodge, Inc.*, 197 N.J. 543, 557 (2009) (other citations omitted). The "learned professionals" exemption is a judicially crafted rule under which certain transactions fall outside the CFA's purview because they involve services provided by learned professionals in their professional capacity. *Lee v. First Union Nat'l Bank*, 199 N.J. 251, 263-64 (2009).  The rationale for the exception is that uniform regulation of a particular occupation, where such regulation exists, could cause conflict with regulation under the CFA.  *Id.* at 264. Under the exception, New Jersey law "continues to identify learned professionals as beyond the reach of the [CFA] so long as they are operating in their professional capacities." *Macedo v. Dello Russo*, 178 N.J. 340, 345-46 (2004).  In New Jersey, both teachers and primary and

secondary schools, even private Catholic schools and teachers, are subject to state licensing and regulations. *See N.J.S.A.* Title 18A generally. Thus, Church Defendants are exempt from the CFA. Importantly, the New Jersey Courts have ruled that certain learned professionals are exempt from the CFA's purview.

In *Watiti v. Walden Univ.*, 2008 WL 2280932 (D.N.J., May 30, 2008) the Court concluded that because a CFA claim sounds in fraud, it is subject to the particularity requirements of Rule 9(b). *Id.* at *15. The Court affirmed the defendants' position that the subject university and its professors were "learned professionals", and therefore entitled to judicial exemption from the CFA. *Id.* at 16 (citing *Gourdine v. Felician College*, 2006 WL 2346278 (N.J. App. Div., August 15, 2006)). Because the parties did not dispute that Walden University was an institution of higher learning, the Court found the CFA was inapplicable to the facts as plead and the claim failed. *Id.* And in *Gourdine*, the Appellate Division affirmed the dismissal of the plaintiffs' CFA claim based on the "learned professionals" exemption as to the defendants Felician College and Sister Morris, the vice president for academic affairs at the college. *Gourdine*, 2006 WL 2346278 at *7.

Count Ten on its face fails to state a valid claim under the CFA. It does not contain allegations on the requisite elements of specific unlawful conduct committed by any of the Church Defendants and fails to allege Plaintiffs suffered an ascertainable loss which was causally related to the Church Defendants' alleged conduct. *Thiedemann v. Mercedes-Benz USA, LLC*, 183 N.J. 234, 248 (2005). Having failed to properly and with particularity plead unlawful conduct, causation and ascertainable loss, Plaintiffs' CFA claim fails.

## **CONCLUSION**

For all of the foregoing reasons, the Church Defendants respectfully assert that the Court should grant the Church Defendants' Rule 12(b)(6) motion to dismiss and to dismiss the Complaint in its entirety (the sole exception being any Title IX claim for gender discrimination raised in Count One).

Respectfully Submitted,
CARELLA, BYRNE, CECCHI,
OLSTEIN, BRODY & AGNELLO, P.C.
Attorneys for Defendants
Roman Catholic Archdiocese of Newark (i.p.a. "Archdiocese of Newark"), St. Theresa's R.C. Church (i.p.a. "St. Theresa School"), Joseph W. Cardinal Tobin (i.p.a. "Cardinal Joseph Tobin"), Rev. Msgr. Thomas P. Nydegger, V.G. ("i.p.a. Msgr. Nydegger"), Dr. Margaret Dames, James Goodness, Father Joseph Bejgrowicz, Deacon Joseph Caporaso (i.p.a. "Joseph Caporoso"), Sister Helene Godin, Richard Donovan, and Anh Bui

By: _____
CHRISTOPHER H. WESTRICK

Dated:  September 4, 2018

#657288v3

41