Chambers of
**Leda Dunn Wettre**
United States Magistrate Judge

Martin Luther King Federal Building
& U.S. Courthouse
50 Walnut Street
Newark, NJ 07101
(973) 645-3574

October 25, 2019

To:  All counsel of record

## LETTER OPINION AND ORDER

Re:  *Scott Phillips, On Behalf of Himself and as Guardian Ad Litem*
*B.P. and K.P. v. Archdiocese of Newark, St. Theresa School, St. Theresa Church et al.,*
**Civil Action No. 18-12207 (MCA) (LDW)**

Dear Counsel:

Before the Court is a dispute concerning the scope of the "limited discovery" ordered by the Court "on the issue of whether St. Theresa's School is a recipient of federal funds within the meaning of Title IX" of the Education Amendments Act, 20 U.S.C. § 1681 *et seq*. ECF 69. Whether Title IX applies to the claims in this lawsuit is a threshold issue for the Court in determining whether there is subject matter jurisdiction over this action, as such jurisdiction is premised solely on the existence of a federal question (Title IX) under 28 U.S.C. §1331. *See* Complaint, ECF 1, Exh. A (hereinafter, "Complaint"), at 19. Several settlement conferences over the past several months having failed to resolve this action, the Court now rules on the dispute as set forth in the parties' joint letter of June 10, 2019. ECF 81.

Briefly by way of background, plaintiff alleges that his three children suffered various forms of mistreatment by the defendants while attending Saint Theresa's School ("STS") in Kenilworth, New Jersey. STS is owned and operated by Saint Theresa's R.C. Church (collectively, the entities will therefore be referred to as "Saint Theresa's"). Saint Theresa's operates within the Archdiocese of Newark (the "Archdiocese"). Specifically relevant to this dispute is plaintiff's allegation that defendants violated Title IX by prohibiting his daughter S.P. from playing on Saint Theresa's boys basketball team when there was no comparable girls' team for her age group and skill level. *See* Complaint ¶¶ 35-66, Count One at 19.

The issue for the Court is what discovery is relevant and proportional, within the meaning of Federal Rule of Civil Procedure 26(b), to the Court's determination of whether Saint Theresa's receives funding that subjects it to the mandates of Title IX. That statute generally requires that "[n]o person . . . on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any educational program or activity receiving Federal Financial assistance." 20 U.S.C. § 1681(a). A "program or activity" receiving federal funding includes "all of the operations of . . . a local educational agency . . ., system of vocational education,

or other school system." 20 U.S.C. § 1687 (2)(B). Thus, if any part of a "school system" receives federal financial assistance, all the operations of that school system are subject to the provisions of Title IX. *See National Collegiate Athletic Ass'n v. Smith*, 525 U.S. 459, 466 (1999); *Smith v. National Collegiate Athletic Ass'n*, 266 F.3d 152, 160 (3d Cir. 2001) ("an entity may receive federal financial assistance indirectly and still be considered a recipient for purposes of Title IX"); *Russo v. Diocese of Greensburg*, 2010 WL 3656579, at *4 (W.D.Pa. Sept. 15, 2010) ("the prohibition on discrimination applied to the entire institution and all of its operations, programs, and activities whenever it received any federal funds at all"); *Valesky v. Aquinas Acad.*, No. CIV.A. 09-800, 2011 WL 4102584, at *10 (W.D. Pa. Sept. 14, 2011) (a "recipient" of federal financial assistance includes any private institution to whom federal financial assistance is extended through another recipient).

Defendants Saint Theresa's and the Archdiocese object to plaintiff's written discovery demands, which seek information about federal funding received not only by Saint Theresa's but also by the Archdiocese. They contend that because Saint Theresa's is separately incorporated from the Archdiocese, it is its own "school system" within the meaning of Title IX and that, therefore, discovery about federal funding should not go beyond the funding received by Saint Theresa's per se. Defendants also seem to assert that discovery should be further limited to some subset of federal funding received by Saint Theresa's. Plaintiff, on the other hand, argues that courts within this Circuit have not considered separate incorporation dispositive on the issue of defining the relevant "school system" that receives federal funding and that it should have broader discovery into any federal financial assistance received by an entity that may be deemed by the District Judge to form part of the "school system" of which Saint Theresa's is a part.

In deciding this dispute, the Court is mindful that the evidence adduced during this period of limited discovery on federal funding will be used to determine whether Title IX applies to this action and therefore whether this Court has subject matter jurisdiction over this action. It will be for the able District Judge to determine in deciding that motion how to define the relevant "school system" that receives federal funding, and whether that funding is of a nature and at a level that subjects the school system to Title IX's requirements. Therefore, it would be inappropriate for the undersigned to deny plaintiff discovery that is relevant and proportional to that analysis.

There is no binding authority that requires the Court to deny discovery of federal funding received by the Archdiocese based on its being separately incorporated from Saint Theresa's. And persuasive authority within this Circuit has found that the issue of incorporation is not controlling in defining the "school system" at issue. In *Valesky*, for instance, the District Court in determining the scope of the "school system" for purposes of Title IX looked beyond the separate legal status of the school at issue from the Diocese in holding that "the Diocese and [school] may not rely solely on their legal status to shield them from their obligations under Title IX." 2011 WL 4102584, at *8. Instead, in determining what the "other school system" was under Title IX in that case, the court analyzed the interrelationship of the Diocese and the school in various ways, including looking at whether the Diocese appointed officials who played a role in governing the school at issue, whether the finances of the school and Diocese were intertwined, and what administrative and technological support the Diocese gave the school. *See id.* at *11. The court concluded: "Given the extensive involvement, both administratively and financially, of the Diocese with the Diocesan schools, including Aquinas [the school at issue], I find that the Diocese

constitutes an 'other school system' for purposes of Title IX." *Id.* As discovery here, if not unduly restricted, could potentially lead to a similar conclusion, the Court finds that it would not be appropriate to preclude plaintiff from taking discovery of the Archdiocese on the sole basis that it is separately incorporated from Saint Theresa's.

Therefore, the Court will allow discovery into the interrelationship of the activities of Saint Theresa's and the Archdiocese that may bear on whether they form part of the same "school system" under Title IX. It will further allow discovery into the federal funds received by Saint Theresa's and the Archdiocese and how the Archdiocese uses federal funds for STS and other parochial schools within the Archdiocese that may potentially be deemed part of the same "school system," including the nature and amount of those funds over the relevant time period to this lawsuit. Further, the Court does not limit this discovery to only a subset of federal programs, as urged by defendants, given the expansive language in Title IX to the contrary. *See* 20 U.S.C. § 1687 (2)(B); *National Collegiate Athletic Ass'n*, 525 U.S. at 466; *Russo,* 2010 WL 3656579, at *4.

This does not entitle plaintiff, however, to exhaustive discovery into these subjects of the type it previously propounded. *See* ECF 79 at 56 to 63. In order to keep discovery proportional to the issues most relevant to the Title IX funding analysis, plaintiff may serve up to five (5) interrogatories each on Saint Theresa's and the Archdiocese calling for them to provide information initially in a summary manner, such as by answering interrogatories summarizing their receipt and distribution of federal funds. Plaintiff may then use the defendants' interrogatory responses to craft targeted requests for production that are designed to test and probe the specifics of the information provided by the defendants.

In accordance with the foregoing, plaintiff may serve revised sets of interrogatories on the defendants within seven days of this Order. Defendants are directed to respond to such interrogatories within 21 days of service. Plaintiff may then serve revised requests for production within seven days of receipt of defendants' interrogatory responses, and defendants shall produce responsive information within 21 days of receipt of the demands.[1] This Court shall hold a telephone status conference on January 15, 2020, at 11:30 a.m. to set a schedule for further motion practice on the Title IX funding issue.

*s/ Leda Dunn Wettre*
**Hon. Leda Dunn Wettre**
**United States Magistrate Judge**

Orig: Clerk
cc:   Hon. Madeline Cox Arleo, U.S.D.J.
      Counsel of Record

---

[1] The Court is cognizant that these time periods may be impacted by the year-end holidays, and it leaves it to counsel to agree to appropriate adjustments to account for the holidays; however, all written discovery should be completed by the time of the Court's status telephone conference with counsel. The Court sets the above time frame to connote its expectation that this limited discovery be taken on a prioritized and expedited basis due to the litigation time lost during the worthy efforts to settle.