# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW JERSEY

SCOTT PHILLIPS, AS GUARDIAN AD
LITEM, ON BEHALF OF S.P., B.P. and K.P.
and SCOTT PHILLIPS,

      Plaintiff,

v.

ARCHDIOCESE OF NEWARK, ST.
THERESA SCHOOL, ST. THERESA
CHURCH, CARDINAL JOSEPH TOBIN,
MSGR. NYDEGGER, MARGARET DAMES,
JOHN DOES 1-100, JOHN DOE
CORPORATIONS 1-5, JOSEPH
BEJGROWICZ, JOSEPH CAPOROSO,
HELENE GODIN, SR. JULIETT PEREZ,
RICHARD DONOVAN, ANH BUI, JAMES
GOODNESS, ROBERT GRIMALDI, WANDA
GRIMALDI, MATT POPOLA, LINDA KOSKI,
MAKAYLA KOSKI, MARY FERRIS, AMBER
PROTZ SIERANT, CHERYL KREINBERG,
JONATHON KREINBERG, PETER
RUNFOLO, JOYCE RUNFOLO, RICH
HARRINGTON, KELLY DONOVAN,
JEANNIE PAVLIK, MATTHEW PAVLIK,
JAMES PAVLIK, MARYANN GASPER,
THERESA ADUBATO, HEATHER
INGERSON, MARIA HARRIS, HEATHER ST
JOHN, YANCY MUNOZ, KATHLEEN
SPOONAUER, CELIA SOUSA, EILEEN
KELLY-O'BRIEN, VICTORIA DEVLIN,
ROSEMARY RUBSAM, ROSANELLY
MONTALVO, GERRI COLON, LAURIE
GRIMES, MICHELLE CERNADAS, JOSEPH
KRATZER JR., NATALIE WOOD, PATRICIA
LANDAU, AMY REITHEL, ANN FERRARI,
CYNTHIA GAILLIOT, BERADINE GILRAIN,
BONNY HOTRA, BLANCA PASTORE,
IZAIDA ROSA GARBANZO, JO RIVERA,
DENISE, RICHARD, JOSEPH, JESSICA,
NICHOLAS MIRABELLA, JOCELYN
EDRALIN, MANUEL VAGUEIRO, KERRI
KILLEN, JO ANN NETTA, NANCY
ZIMMERMAN, MARIA STREKO, ROCIO
CORVALAN, CHRISTINA RESTUCCIA,
MICHAEL DEVLIN, GUILLERMO MUNOZ,

Civil Action No. 2:18-cv-12207 (MCA) (LDW)

**Motion Hearing Date:  March 16, 2020**

**<u>ORAL ARGUMENT REQUESTED</u>**

DEBORAH GIVENS/MATE, KAREN
ZIMMERMAN, JIM HANNON, ALICE
SCALA, EMILY VIDAL, MARY GAINES,
SUSAN GIORDINO, ROSEANNE SCHUR,
ANGELA LOMBARDI, ROGER SCHUR,
MICHAEL MONTALVO, JEFF FERRARI,
WILLIAM GORSKI, ROGER STRYESKI,
THOMAS BRACKEN, FRED SOOS, SUSAN
DOUGHERTY, MICHELE MILLER, ANN
MORTIMER, TRISH RICKEN PLUMMER,
ANDREA ZAGORSKI SCHUSTER, MARIA
BUI, AMY ROSE, KELLY ANN HARRIS,
PATRICIA RIMILI BLICHARZ, "BCSH9094",
"STDA" AND "BEEZLEBROX",

    Defendants.

:
:
:
:
:
:
:
:
:
:

---

## THE CHURCH DEFENDANTS' BRIEF IN SUPPORT OF MOTION FOR PARTIAL SUMMARY JUDGMENT DISMISSING PLAINTIFF'S TITLE IX CLAIM IN COUNT ONE OF THEIR COMPLAINT

CARELLA, BYRNE, CECCHI, OLSTEIN,
BRODY & AGNELLO, P.C.
5 Becker Farm Road
Roseland, New Jersey 07068
(973) 994-1700
Attorneys for Defendants,
Roman Catholic Archdiocese of Newark (i.p.a.
"Archdiocese of Newark"), St. Theresa's R.C.
Church (i.p.a. "St. Theresa School"), Joseph W.
Cardinal Tobin (i.p.a. "Cardinal Joseph Tobin"), Rev.
Msgr. Thomas P. Nydegger, V.G. ("i.p.a. Msgr.
Nydegger"), Dr. Margaret Dames, James Goodness,
Father Joseph Bejgrowicz, Deacon Joseph Caporaso
(i.p.a. "Joseph Caporoso"), Sister Helene Godin,
Richard Donovan, and Anh Bui

**Of Counsel and On the Brief:**
    Christopher H. Westrick, Esq. (043721997)

**On the Brief:**
    Brian H. Fenlon, Esq. (035071987)

# **TABLE OF CONTENTS**

Page

TABLE OF AUTHORITIES ............................................................................................... ii

CHURCH DEFENDANTS' PROCEDURAL HISTORY AND STATEMENT OF FACTS ................................................................................................................................ 1

LEGAL ARGUMENT ........................................................................................................ 4

POINT I
COUNT ONE OF THE COMPLAINT, ALLEGING VIOLATION OF TITLE IX, IS DEFECTIVELY PLED AND WITHOUT EVIDENTIAL SUPPORT AND SHOULD, RESPECTFULLY, BE DISMISSED BY THE COURT ................................... 4

A.  Standards Governing Title IX Claims and Student Participation in Scholastic Athletics. ......................................................................................................... 4

B.  Application of Facts in Record to Governing Case Law. ............................................. 7

POINT II
SINCE THE PLAINTIFF'S TITLE IX CLAIM FAILS, THE COURT MUST DETERMINE WHETHER TO EXERCISE SUPPLEMENTAL JURISDICTION OVER THE REMAINING STATE LAW CLAIMS IN THE COMPLAINT ................. 13

POINT III
STANDARDS GOVERNING PLEADING IN FEDERAL COURT AND RULE 12(b)(6) AND SUMMARY JUDGMENT MOTIONS .................................................... 14

A.  Summary Judgment Standards.  ............................................................................... 14

B.  Rule 12(b)(6) Standards. ............................................................................................ 15

CONCLUSION ................................................................................................................. 17

## **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

Anderson v. Liberty Lobby, Inc.,
   477 U.S. 242 (1986)............................................................................14, 15

Ashcroft v. Iqbal,
   129 S.Ct. 1937 (2009).................................................................................16

Bell Atlantic Corp. v. Twombly,
   550 U.S. 544 (2007)...............................................................................15, 16

Bercovitch v. Baldwin School, Inc.,
   133 F.3d 141 (1ˢᵗ Cir. 1998).........................................................................9

Brands v. Sheldon Community School,
   671 F. Supp. 627 (N.D. Iowa 1987) .............................................................5

Brindisi v. Regano,
   20 Fed. Appx. 508 (6th Cir. 2001)................................................................4

Buckley v. Archdiocese of Rockville Center,
   992 F. Supp. 586 (E.D.N.Y. 1993) ...............................................................9

Celotex Corp. v. Catrett,
   477 U.S. 317 (1986)..............................................................................14, 15

Clement v. Roman Catholic Diocese of Erie,
   2017 WL 2619134 (W.D. Pa., June 16, 2017) .............................................8

Colarossi v. Schmid Laboratories, Inc.,
   830 F. Supp. 230 (D.N.J. 1993)..................................................................15

DeJoy v. Comcast Cable Comm., Inc.,
   941 F. Supp. 468 (D.N.J. 1996)..................................................................16

DM Research, Inc. v. College of Amer. Pathologists,
   170 F.3d 53 (1st Cir. 1999)..........................................................................16

Fitzgerald v. Barnstable School Committee,
   555 U.S. 246 (2009).....................................................................................6

Fowler v. UPMC Shadyside,
   578 F.3d 203 (3d Cir. 2009) .......................................................................15

Gonyo v. Drake Univ.,
    837 F. Supp. 989 (S.D. Iowa 1993) ..................................................................4

Holloway v. Howard University,
    206 F. Supp. 3d 446 (D.D.C. 2016) .................................................................7

Kelley v. Iowa State Univ. of Science of Teck.,
    311 F. Supp. 3d 1051 (S.D. Iowa 2018) ..........................................................5

L.P.M. v. School Bd. of Seminole County,
    753 So. 2d 130 (Fla. Dist. Ct. App. 2000) ......................................................5

Manolov v. Borough of Manhattan Community College,
    952 F. Supp. 2d 522 (S.D.N.Y. 2013) ....................................................5, 6, 13

Marshall v. Sisters of the Holy Family of Nazareth,
    399 F. Supp. 597 (E.D. Pa. 2005) ...................................................................9

Mehrhoff v. Williamford Union Free School District,
    2005 WL 2077292 (E.D.N.Y. 2005, Aug. 22, 2005) .....................................8

Miotto v. Yonkers Public Schools,
    534 F. Supp. 2d 422 (S.D.N.Y. 2008) ............................................................8

Neitzke v. Williams,
    490 U.S. 319 (1985).......................................................................................16

Norris v. Norwalk Public School,
    124 F. Supp. 2d 791 (D. Conn. 2000)..............................................................6

O'Connor v. Bd. of Educ. of Sch. Dist. 23,
    545 F. Supp. 376 (N.D. Ill. 1982)..............................................................11, 12

O'Connor v. Bd. of Educ. of Sch. Dist. 23,
    645 F.2d 578 (7th Cir. 1981) ........................................................................11

Phillips v. County of Allegheny,
    515 F.3d 224 (3d Cir. 2008) ..........................................................................15

Pyles v. United Air Lines, Inc.,
    79 F.3d 1046 (11th Cir. 1996) .......................................................................16

Smith v. Metropolitan School District Perry Tp.,
    128 F. 3d 1014 (7th Cir. 1997) .....................................................................6, 7

Tingley-Kelley v. Trustees of University of PA,
    677 F. Supp. 2d 764 (E.D. Pa. 2010) ..............................................................5

TPTCC NY, Inc. v. Radiation Therapy Services,
    453 Fed. Appx. 105 (2d Cir. 2011) ........................................................................13

U.S. v. Noble Learning Communities, Inc.,
    676 F. Supp. 2d 379 (E.D. Pa. 2009) ....................................................................15

Walsh v. LA High School Athletic Ass'n,
    616 F.2d 152 (5th Cir. 1980) ................................................................................4

William v. Borough of West Chester,
    891 F.2d 458 (3d Cir. 1989) ................................................................................14

Williams v. Edelman,
    408 F.Supp.2d 1261 (S.D. Fla. 2005) ...................................................................16

Wooten v. Pleasant Hope R-VI School Dist.,
    139 F. Supp. 2d 835 (W.D. Mo. 2000) .................................................................4

Yusuf v. Vassar College,
    35 F.3d 709 (2d Cir. 1994) ...............................................................................5, 6

Zangrillo v. FIT,
    601 F. Supp. 1346 (S.D.N.Y. 1985) ..................................................................8, 10

**Statutes**

28 U.S.C. §1367(C) ....................................................................................................13

**Other Authorities**

45 C.F.R. § 86.41(b) ...................................................................................................10

45 C.F.R. § 86.41(c)(i)................................................................................................11

Fed. R. Civ. P. 56(a) ..................................................................................................14

## CHURCH DEFENDANTS' PROCEDURAL HISTORY AND STATEMENT OF FACTS

The Complaint filed by plaintiffs Scott Phillips, individually and as guardian ad litem for his children, S.P., B.P., and K.P. ("Phillips", or collectively the "Plaintiffs"), asserts myriad state claims and one federal claim against Defendants Roman Catholic Archdiocese of Newark ("Archdiocese"), St. Theresa's R.C. Church ("St. Theresa"), St. Theresa's School ("STS"), Joseph W. Cardinal Tobin, Rev. Msgr. Thomas P. Nydegger, V.G., Dr. Margaret Dames, James Goodness, Father Joseph Bejgrowicz, Deacon Joseph Caporaso, Sister Helene Godin, Richard Donovan, and Anh Bui (collectively, the "Church Defendants"). Those claims are without factual or legal basis and arise out of the education of Phillips' children, Plaintiffs K.P., S.P., and B.P., at STS through June 2017. During their enrollment at STS, Phillips and his wife, Theresa Mullen ("Mullen"), on numerous occasions unreasonably disagreed with and challenged their children's respective assignments, grades, student interactions, and how extracurricular activities and disciplinary matters were managed and administered by STS. In each instance, Phillips and Mullen were highly confrontational and unduly antagonistic with STS school officials and personnel.

The Church Defendants, in an effort to follow their mission of providing a Catholic education to all STS students, felt that mission was best served without the ongoing disruptions and distractions caused by Phillips and his wife. As a result, they declined to re-enroll S.P. and K.P. for the 2017-18 school year. Plaintiffs sued the Church Defendants in the Superior Court of New Jersey, Chancery Division, Essex County, Docket No. ESX-C-248-16 (the "Superior Court Action"), See Declaration of Brian H. Fenlon, Esq. ("Fenlon Decl."), Exh. B.

Phillips' amended verified complaint was filed December 9, 2016 in the Superior Court Action and sought issuance of injunctive relief, specific performance, removal of personnel, damages, and rescission of federal funds. The primary relief sought was the issuance of a

preliminary injunction compelling S.P. to be placed on the STS 7th grade boys' CYO basketball team, as for a variety of reasons the School was unable to field a girls' team that season. Judge Kessler denied Phillips' initial two applications as procedurally defective and insufficient on the merits. On February 17, 2017, Judge Kessler reversed his previous denials and granted a limited preliminary injunction in favor of S.P. directing she be made a member of the 7th grade boys' team for the remainder of the 2016-17 season. S.P. played in the final regular season game and one playoff game.

By July 13, 2017 order, Judge Kessler ruled the plenary hearing would address "Plaintiffs' application for an injunction to compel S.P. and K.P. to be enrolled at [STS] for the 2017-2018 school year in order to determine if Defendants' decision to deny re-enrollment of S.P. and K.P. was an abuse of discretion, or an appropriate secular decision, or an ecclesiastical decision protected by the First Amendment." At the conclusion of the plenary hearing, Judge Kessler ruled in favor of the Church Defendants and against the Plaintiffs, and denied the application for a permanent re-enrollment injunction. See Fenlon Decl., Exh. B, T. 37-5 to 62-18; 65-14 to 94-13. Plaintiffs appealed to the Superior Court, Appellate Division on June 18, 2018, which appeal is still pending.

Meanwhile, Plaintiffs filed this matter in the Superior Court of New Jersey, Essex County, Law Division, on July 2, 2018. See Fenlon Decl., Exh. A, Complaint. Count One alleges, in part, a violation of "Title IX, 20 U.S.C. Sections 1681-1683 et seq." Id. Based upon Plaintiffs' assertion of a claim arising under that federal statute, the Church Defendants removed this matter to federal court on July 30, 2018 [ECF No. 1].

In response to the Complaint following removal, the Church Defendants filed a motion to dismiss the Plaintiffs' NJLAD claim raised in Count One (but did not move as to any Title IX

2

claim therein), and Counts Two through Ten for failure to state claims under Rule 12(b)(6). Similar motions were filed by a large number of the 81 individual defendant parents of fellow STS pupils, members of that parish, and third parties. Those motions were administratively terminated by the Hon. Madeline Cox Arleo, U.S.D.J. on April 25, 2019. [ECF No. 69].

On April 15, 2019, Judge Arleo entered a letter order [ECF No. 59] directing counsel for the Plaintiffs and the Church Defendants to show cause on two issues, the first of which was framed as, "why Count One should not be dismissed for failure to state a claim under Title IX of the Education Amendments Act, 20 U.S.C. §1681, et seq., because, among other things, Defendants have not demonstrated that they received direct federal financial assistance." By Order entered April 25, 2019, Judge Arleo permitted the parties to conduct limited expedited discovery on the issue of whether the Archdiocese and STS received federal financial assistance that would trigger application of Title IX to them. [ECF No. 69]. The parties completed that limited discovery, in which the Archdiocese and STS provided answers under oath to the Plaintiffs' five interrogatories addressed to receipt of any federal financial assistance. See Fenlon Decl., Exhs. E and F. Per January 15, 2020 Text Order entered by the Hon. Leda D. Wettre, U.S.M.J., the Church Defendants were invited by the Court to move to dismiss the Plaintiffs' Title IX claim (and therefore this action based on the lack of subject matter jurisdiction.) [ECF No. 92].

**LEGAL ARGUMENT**

**POINT I**

**COUNT ONE OF THE COMPLAINT, ALLEGING VIOLATION OF TITLE IX, IS DEFECTIVELY PLED AND WITHOUT EVIDENTIAL SUPPORT AND SHOULD, RESPECTFULLY, BE DISMISSED BY THE COURT**

**A.    Standards Governing Title IX Claims and Student Participation in Scholastic Athletics.**

It is well settled that students at the primary, secondary and collegiate levels do not possess a liberty or property interest in participating in interscholastic athletics and extracurricular activities, and the opportunity to participate in them is not in and of itself a property interest. Brindisi v. Regano, 20 Fed. Appx. 508, 510 (6th Cir. 2001). Although the right to attend school and receive an education is a legitimate property interest, every single component of the educational process does not create a property interest subject to constitutional protection. Wooten v. Pleasant Hope R-VI School Dist., 139 F. Supp. 2d 835, 840 (W.D. Mo. 2000). The vast majority of cases and the prevailing authority in the United States have concluded there is no federally protected property interest in a student's participation in extracurricular activities or interscholastic athletics. Id. Similarly, there is no established right of parents to have their children compete in interscholastic athletics. Id. at 841. Importantly, "Title IX does not establish a right to participate in any particular sport in one's college and there is no constitutional right to participate in intercollegiate or high school athletics." Gonyo v. Drake Univ., 837 F. Supp. 989, 994 (S.D. Iowa 1993).

Consequently, a student's interest in participating in a single year of interscholastic athletics amounts to nothing more than a mere expectation, not a constitutionally protected claim of entitlement. Walsh v. LA High School Athletic Ass'n., 616 F.2d 152, 159 (5th Cir. 1980).

"Participation in extracurricular sport activities is a privilege, not a right." <u>L.P.M. v. School Bd.</u> <u>of Seminole County</u>, 753 So. 2d 130, 132 (Fla. Dist. Ct. App. 2000). The view of states' courts assessing the existence of a protected interest under state constitutions is in accord. <u>Id.</u> at 132-33. The clear majority of federal courts addressing the question (even in the context of collegiate athletics), have ruled athletes have no legitimate entitlement to participation therein. <u>Brands v.</u> <u>Sheldon Community School</u>, 671 F. Supp. 627, 631 (N.D. Iowa 1987).

Title IX provides that protected persons shall not on the basis of sex be subjected to discrimination; per that statute's express language, acts of discrimination must not be on the basis of sex. <u>Kelley v. Iowa State Univ. of Science of Teck.</u>, 311 F. Supp. 3d 1051, 1067 (S.D. Iowa 2018). Discrimination is "on the basis of sex" when the actor's underlying intent and motivation is to discriminate because of another's sex or gender. <u>Id.</u> A valid Title IX claim must allege discriminatory acts based on the plaintiff's sex. <u>Id.</u> at 1068. "To establish a claim under Title IX, the plaintiff must show that (1) she was excluded from participation in, denied the benefits of, or subjected to discrimination in an educational program; (2) that the program receives federal financial assistance; and (3) her exclusion was on the basis of her gender." <u>Tingley-Kelley v.</u> <u>Trustees of University of PA</u>, 677 F. Supp. 2d 764, 775 (E.D. Pa. 2010). In short, successful plaintiffs must prove the challenged action occurred because of gender discrimination. <u>Id.</u>

Valid Title IX claims of discrimination must set forth allegations of intentional discrimination, and that the alleged discrimination was a substantial and motivating factor for the defendant's challenged conduct. <u>Manolov v. Borough of Manhattan Community College</u>, 952 F. Supp. 2d 522, 531-32 (S.D.N.Y. 2013). Legally sufficient allegations of sex discrimination must do more than recite conclusory assertions. "In order to survive a motion to dismiss, the plaintiff must specifically allege the events claimed to constitute intentional discrimination as well as

5

circumstances giving rise to a plausible inference of racially discriminatory intent". Manolov, 952 F. Supp. 2d at 532 (quoting Yusuf v. Vassar College, 35 F.3d 709, 713 (2d Cir. 1994)). Simply put, bald threadbare assertions and conclusions of law are patently insufficient and will not survive a dismissal motion. Id.

"Title IX reaches institutions and programs that receive federal funds, 20 U.S.C. §1681(a), which may include nonpublic institutions, §1681(c), but it has consistently been interpreted as not authorizing suit against school officials, teachers and other individuals." Fitzgerald v. Barnstable School Committee, 555 U.S. 246, 257 (2009). Indeed, the vast majority of courts who have considered the issue have concluded Title IX affords private claimants no private right of action against individuals, because the statute prohibits discrimination against beneficiaries in programs and activities that receive federal financial assistance, ergo it is the educational institution that must be sued for any violation. Norris v. Norwalk Public School, 124 F. Supp. 2d 791, 796 (D. Conn. 2000). There is no private right of action against individuals because the only remedies exist against private or public entities, and the recipient of federal funds is the educational institution. Id. at 796-98. In short, individuals are not those who operate programs or activities, institutions are and individual defendants are the employees of the alleged institutional recipient of federal funds. Consequently, Title IX claims cannot be asserted against individuals and such claims fail as a matter of law. Id. at 796-98.

The majority of federal courts considering the issue have concluded that only the grant recipient of federal financial assistance can violate Title IX. Smith v. Metropolitan School District Perry Tp., 128 F. 3d 1014, 1018 (7th Cir. 1997). Plaintiffs cannot maintain valid Title IX causes of action against individuals because such actions can only be brought against an educational institution, not individuals acting as administrators or employees for or of the institution. Id.

(citations omitted).  The purpose of Title IX is to prevent discrimination by grant recipients (and because it is the educational institution in question not any individual employees who would be the grant recipient), Title IX individual claims cannot stand, and official capacity claims against principals or other administrators also fail because individuals cannot be considered grant recipients.  Smith, 128 F. 3d. at 1019-21.

The threshold issue as to any Title IX claim is whether there has been discrimination based on sex.  Holloway v. Howard University, 206 F. Supp. 3d 446, 452 (D.D.C. 2016).  Where a complaint is barren of factual allegations linking the challenged determination to the plaintiff's gender, the subject claim should be dismissed.  Id.  It is the plaintiff's burden to state a plausible claim under Title IX in his complaint, and absent factual allegations and evidence demonstrating discrimination on the basis of sex has occurred, the claim fails.  Id.

**B.   Application of Facts in Record to Governing Case Law.**

Para. 54 of the Complaint alleges, "Upon information and belief, Defendants Archdiocese, Church and STS accepts Federal funding through the Elementary and Secondary Educational Act of 1965, 20 U.S.C. §6301, et seq."  See Fenlon Decl., Exh. A.  In Paras. 37 and 38 of the Complaint, Plaintiffs allege that, "Defendant AD (sic) BUI improperly dismantled the Girls Varsity Team for the 2016-2017 season thereby resulting in discriminatory conduct against S.P. and "Defendant AD (sic) BUI's discriminatory conduct began in 2015".  Id.  There are no other specific or substantive contentions of alleged discriminatory conduct on the part of the Church Defendants pertaining to Count One set forth in the Complaint.  Id.  Importantly, the subject allegations fail to allege that the purported discriminatory actions were engaged in intentionally or on the basis of sex.  It is undisputed S.P. was a female student attending the seventh grade at STS during the relevant school year.  The Plaintiffs' Title IX discrimination damage claim fails to state a claim if they are unable

7

to prove the Archdiocese or STS undertake any educational programs or activities which receive "federal financial assistance" for such financial assistance is a necessary element of any valid Title IX claim.

"Title IX prohibits discrimination against any student based on gender in educational programs receiving federal funding." Miotto v. Yonkers Public Schools, 534 F. Supp. 2d 422, 425-26 (S.D.N.Y. 2008). Thus "Title IX allows a student to assert a private cause of action against the recipient of the federal funding for the denial of access to education on the basis of gender." Id. Title IX "covers only those programs that receive federal financial assistance." Zangrillo v. FIT, 601 F. Supp. 1346, 1352 (S.D.N.Y. 1985). Where a plaintiff has not alleged and/or cannot demonstrate that the defendant institution received federal financial assistance triggering the applicability of Title IX, their Title IX claim must be dismissed for failure to plead or demonstrate a proper nexus between the institution and federal financial assistance. Id.; Mehrhoff v. Williamford Union Free School District, 2005 WL 2077292 *11 (E.D.N.Y. 2005, Aug. 22, 2005).

St. Theresa is a separate and distinct legal entity from the Archdiocese. Both are private religious corporations of the State of New Jersey, under New Jersey law. See Fenlon Decl., Exhs. C and D. St. Theresa owns and operates STS, which does not have any separate legal status separate and apart from St. Theresa.

The issue of whether a Catholic diocese, church or parochial school is the recipient of federal financial assistance triggering applicability of Title IX or other federal anti-discrimination laws for which receipt of such funding is a necessary element, is a complex question of mixed factual and legal issues which involves a fact intensive inquiry. See Clement v. Roman Catholic Diocese of Erie, 2017 WL 2619134 *4 (W.D. Pa., June 16, 2017). Counsel has not found a reported decision issued by the U.S. District Court, District of New Jersey or the U.S. Court of

8

Appeals for the Third Circuit ruling on matters pertaining to the applicability of Title IX to private Roman Catholic religious educational institutions, or on the nature of federal financial assistance which would trigger Title IX liability.

One district court has held that a religious school "does not achieve that status by receipt of some small amount of material aid purchased by a third party with federal funds." Marshall v. Sisters of the Holy Family of Nazareth, 399 F. Supp. 2d 597, 602-03 (E.D. Pa. 2005) (citing Bercovitch v. Baldwin School, Inc., 133 F.3d 141, 152 (1st Cir. 1998)). Marshall stands for the proposition that certain limited federal funding can be de minimus, and does not mandate or require a finding the school received federal aid. Id. at 603. And in Buckley v. Archdiocese of Rockville Center, 992 F. Supp. 586 (E.D.N.Y. 1993), the district court declined to extend Title IX protections to the Catholic high school in question, holding reimbursement for continuing education and seminars teachers attended and the indirect provision of $1,600 in federal funds for instructional materials was de minimus and did not affect its holding the Archdiocese and other Catholic defendants did not receive federal funds. Buckley, 992 F. Supp. at 589, n.5.

The issue whether any triggering federal funding was received by the Archdiocese, St. Theresa and/or STS from 2016-2018 was the subject of Court ordered discovery. With that discovery having been completed, the Church Defendants respectfully submit the Title IX claim raised in Count One of Plaintiffs' Complaint is ripe for dismissal. The Plaintiffs' Title IX claim was solely grounded upon an allegation, made only upon information and belief, that the Church Defendants accept federal funding through the Elementary and Secondary Educational Act of 1965, 20 U.S.C. §6301, et seq. See Fenlon Decl., Exh. A, para. 54. In its answers to the Plaintiffs' interrogatories, the Archdiocese answered under oath that it received no federal funds/financial assistance, direct or indirect, during the years 2016-2018. Id. at Exh. E. Similarly, STS answered

the Plaintiffs' interrogatories under oath responding in the negative, but indicating STS students and teachers received equitable services funded by the federal government in 2016-17 and 2017-18 under IDEA, Title I, and Title IIA.  See Fenlon Decl., Exh. F.  Pursuant to the United States Department of Education's website, receipt of such equitable services under the ESEA or IDEA does not render STS (a private Roman Catholic elementary school) to be a recipient of federal financial assistance that subjects STS to federal civil rights laws prohibiting discrimination, including Title IX as to sex.  Id. at Exhs. F and G.

After completing the limited discovery granted by the Court, the Plaintiffs have no competent evidence that the Archdiocese or STS received such funding or financial assistance in the 2016-17 and 2017-18 school years.  Therefore, Plaintiffs' Title IX claim fails as a matter of law, because they cannot establish and demonstrate the required sufficient nexus between the receipt of such financial assistance and the Church Defendants.  Zangrillo, 601 F. Supp. at 1352.  Consequently, the Church Defendants are entitled to the grant of partial summary judgment and the dismissal, with prejudice, of Count One of the Complaint to the extent it purports to raise a Title IX discrimination claim.

Plaintiffs' Title IX claim is subject to dismissal not simply based on the lack of any triggering federal funding but, among other things, because Title IX is inapplicable to them since basketball is a "contact sport".  Under Title IX regulations, basketball is expressly ruled a "contact sport". 45 C.F.R. § 86.41(b).  The regulations specifically protect a school such as STS's right to maintain separate teams in basketball, given that status.  Even if a school operates only one sports team for only one sex and not the other, members of the excluded sex are permitted to try out for that team except if the sport in question is a "contact sport", as Title IX regulations define basketball.

In <u>O'Connor v. Bd. of Educ. of Sch. Dist. 23</u>, 545 F. Supp. 376 (N.D. Ill. 1982) (complying with 645 F.2d 578 (7th Cir. 1981)), plaintiff was an 11 year old sixth grade girl enrolled in that junior high school. <u>Id.</u> at 378. She had played organized basketball since she was seven and wished to play with the sixth grade boys team, as she thought only they would provide the competition she desired. <u>Id.</u> at 377-78. The principal, superintendent, and president of the league refused to let her try out. <u>Id.</u> at 378. Her parents filed suit seeking injunctive relief. <u>Id.</u> The trial court issued the injunction but refused to issue a stay. <u>Id.</u> Defendants immediately appealed and the Seventh Circuit issued a stay within four days, affirming the stay <u>en banc</u> two days later. <u>Id.</u>

Plaintiff appealed to Justice Stevens as Circuit Justice to lift the stay, which he refused to do. <u>Id.</u> Ultimately, the Seventh Circuit reversed the injunctive relief, holding the trial court incorrectly applied established precedents, there was no irreparable injury, no likelihood of success on the merits, and remanded the matter for further proceedings. <u>Id.</u>; see also <u>O'Connor v. Bd. of Educ. of Sch. Dist. 23</u>, 645 F.2d 578 (7th Cir. 1981).

Back in the trial court, defendants moved for summary judgment, which was granted. <u>O'Connor</u>, 545 F. Supp. at 378. The court held a refusal by a school board to allow an 11 year old girl to try out for the boys' basketball team did not violate any equal protection rights or rights under Title IX. <u>Id.</u> In rejecting her Title IX claim, the court cited 45 <u>C.F.R.</u> § 86.41, noting the regulation provided no comfort to her claim. <u>Id.</u> at 382-84. Plaintiff attempted, unsuccessfully, to claim the selection of sports at her school did not accommodate the interests and abilities of members of both sexes. <u>Id.</u> The court found instead, "As long as there is no discrimination against members of either sex, the institution may offer whatever sports it desires. The 'determination of student interest' provision has been removed. A new paragraph 86.41(c)(i) (sic) requires institutions to select 'sports and levels of competition which effectively accommodate the interests

and abilities of members of both sexes.'  In so doing, an institution should consider by a reasonable method it deems appropriate, the interests of both sexes."  O'Connor, 545 F. Supp. at 378.

Here, S.P. was then a 12-year old seventh grade girl attending STS.  The Union County CYO League rules called for separate boys' and girls' divisions and teams for that age group because basketball is viewed as a "contact sport", which rules STS adhered to.  There was simply insufficient interest at STS to field a girls' CYO basketball team for the 2016-17 season as had occurred in previous years, so STS proceeded with just the boys' CYO basketball team that season (as it was fully and legally permitted to do under Title IX and O'Connor).

## POINT II

## SINCE THE PLAINTIFF'S TITLE IX CLAIM FAILS, THE COURT MUST DETERMINE WHETHER TO EXERCISE SUPPLEMENTAL JURISDICTION OVER THE REMAINING STATE LAW CLAIMS IN THE COMPLAINT.

Federal courts may exercise supplemental jurisdiction over state law claims, where federal claims vest the Court with subject matter jurisdiction and the state and federal claims derive from a common nucleus of operative facts.  Manolov, 952 F. Supp. 2d at 536.  A district court may decline to exercise supplemental jurisdiction if the Court has dismissed all federal claims over which it possesses original jurisdiction.  Id.  While there is no mandatory bright line rule to be applied inflexibly in all cases involving the exercise of supplemental jurisdiction, the clear general rule holds that where all the federal law claims have been dismissed prior to trial, the balance of factors does weigh in favor of the Court declining to exercise such jurisdiction.  TPTCC NY, Inc. v. Radiation Therapy Services, 453 Fed. Appx. 105, 107 (2d Cir. 2011).

In this case, the Church Defendants removed the Plaintiff's Complaint to this Court.  In lieu of filing answers, the Church Defendants and a number of the other individual defendants filed motions to dismiss the Complaint pursuant to Rule 12 (b)(6).  Those motions were administratively terminated in the Court's April 25, 2019 Order [ECF No. 69].  Limited discovery was permitted by the Court solely on the issue of whether the Church Defendants received, either directly or indirectly, federal financial assistance triggering the applicability of Title IX.  There have been a number of conferences and one hearing with the Court.  No other discovery has been conducted or taken by the parties and the matter is not in a posture to be ready for trial.

Given these factors, this Court may decline to exercise supplemental jurisdiction over the Plaintiff's remaining state law claims (as asserted in the Complaint).  See 28 U.S.C. §1367(C).

## POINT III

### STANDARDS GOVERNING PLEADING IN FEDERAL COURT AND RULE 12(b)(6) AND SUMMARY JUDGMENT MOTIONS

**A.     Summary Judgment Standards.**

The Supreme Court's liberal standard for evaluating summary judgment "requires the motion judge to engage in an analytical process essentially the same as that necessary to rule on a motion for a directed verdict: 'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 251 (1986).  There is no issue for trial unless there is satisfactory evidence favoring the non-moving party, sufficient to permit a rational jury to return a verdict for that party.  Id. at 249.  The Federal Rules authorize parties to file motions for summary judgment or partial summary judgment, so moving by identifying each claim (or part of each claim) on which summary judgment is sought.  Fed. R. Civ. P. 56(a).  "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Id.

Importantly, where the facts in the record render the non-moving party's claims implausible, he must come forward with more persuasive evidence to support them, than would otherwise be necessary.  William v. Borough of West Chester, 891 F.2d 458, 460 n.2 (3d Cir. 1989).  The party moving for summary judgment bears the initial burden of demonstrating the absence of a genuine issue of material fact and entitlement to judgment as a matter of law.  Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986).  In so doing, the movant need simply point out to the Court the lack of evidence for the other party on any essential element of the claim moved against.  Celotex, 477 U.S. at 325.  Summary judgment is not a "disfavored procedural shortcut", it is an important procedure designed "to secure the just, speedy and inexpensive determination of

every action." Id. at 327. Critically, plaintiffs are unable to defeat a properly supported summary judgment motion by resting on conclusory allegations, since they are required to offer significant probative evidence supporting their complaints. Anderson, 477 U.S. at 249. In determining whether a fact dispute is "genuine", Phillips bears "the affirmative burden of coming forward with specific facts evidencing a need for trial." Colarossi v. Schmid Laboratories, Inc., 830 F. Supp. 230, 235 (D.N.J. 1993).

The grant of summary judgment is mandatory where a party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex, 477 U.S. at 322. A complete failure of proof as to any one essential element of the non-moving party's claim, necessarily renders all other facts immaterial. Id. at 322-23. The Church Defendants are entitled to judgment as a matter of law dismissing Phillips' Title IX claim, should he fail to prove any of the essential elements of that claim (on which he bears the burden of proof). Id. at 323.

**B.      Rule 12 (b)(6) Standards.**

To state a valid cause of action, the party's factual allegations must raise the right to relief above the speculative level. Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007)); Phillips v. County of Allegheny, 515 F.3d 224, 232 (3d Cir. 2008). Here, Phillips' Title IX claim fails to offer even "labels and conclusions" or "a formulaic recitation of the elements", thus as plead Count One of the Complaint is patently insufficient. U.S. v. Noble Learning Communities, Inc., 676 F. Supp. 2d 379, 382 (E.D. Pa. 2009). Further, threadbare recitals of a claim's elements, supported only by mere conclusory statements, do not present a valid prima facie claim. Noble Learning, 676 F. Supp. 2d at 383. The Third Circuit has applied this standard in the context of discrimination claims. See Fowler v. UPMC Shadyside, 578 F.3d 203, 210-11 (3d Cir. 2009).

The Complaint should be dismissed because the Plaintiffs failed to plead grounds to their entitlement to relief. The factual allegations contained in any legally sufficient complaint must be specific enough to justify "dragging a defendant past the pleading threshold in any given case." DM Research, Inc. v. College of Amer. Pathologists, 170 F.3d 53, 55 (1st Cir. 1999). Dismissal is warranted when the Complaint runs contrary to a dispositive issue of law as to which no construction of the factual allegations will suffice, Williams v. Edelman, 408 F.Supp.2d 1261, 1264 (S.D. Fla. 2005), or "lacks a sufficient factual predicate." Pyles v. United Air Lines, Inc., 79 F.3d 1046, 1049 (11th Cir. 1996). The sweep of Rule 12(b)(6) clearly covers "claims of law which are obviously insupportable." Neitzke v. Williams, 490 U.S. 319, 327 (1985).

A complaint fails to state a claim where it has pled nothing factually that satisfies each of the requisite elements of the particular cause of action. Pyles, 79 F.3d at 1049. It is inappropriate for the Court to presume the Plaintiffs can prove any facts which they have not alleged. DeJoy v. Comcast Cable Comm., Inc., 941 F. Supp. 468, 473 (D.N.J. 1996). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 129 S.Ct. 1937, 1949 (2009) (quoting Twombly, 550 U.S. at 555).

## CONCLUSION

For all of the foregoing reasons, the Church Defendants respectfully assert this Court should grant their motion for partial summary and dismiss with prejudice Count One of the Complaint to the extent is purports to assert a claim under Title IX of the Education Amendments Act, 20 U.S.C. §1681, et seq., for failure to state a claim.

Respectfully Submitted,

CARELLA, BYRNE, CECCHI,
OLSTEIN, BRODY & AGNELLO, P.C.
Attorneys for Defendants
Roman Catholic Archdiocese of Newark (i.p.a.
"Archdiocese of Newark"), St. Theresa's R.C.
Church (i.p.a. "St. Theresa School"), Joseph W.
Cardinal Tobin (i.p.a. "Cardinal Joseph Tobin"), Rev.
Msgr. Thomas P. Nydegger, V.G. ("i.p.a. Msgr.
Nydegger"), Dr. Margaret Dames, James Goodness,
Father Joseph Bejgrowicz, Deacon Joseph Caporaso
(i.p.a. "Joseph Caporoso"), Sister Helene Godin,
Richard Donovan, and Anh Bui

By:    /s/ Christopher H. Westrick
       CHRISTOPHER H. WESTRICK

Dated:  February 21, 2020

#688868

17