UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| SCOTT PHILLIPS, AS GUARDIAN AD LITEM, ON BEHALF OF S.P., B.P. and K.P. and SCOTT PHILLIPS,<br><br>Plaintiff,<br><br>v.<br><br>ARCHDIOCESE OF NEWARK, ST. THERESA SCHOOL, ST. THERESA CHURCH, CARDINAL JOSEPH TOBIN, MSGR. NYDEGGER, MARGARET DAMES, JOHN DOES 1-100, JOHN DOE CORPORATIONS 1-5, JOSEPH BEJGROWICZ, JOSEPH CAPOROSO, HELENE GODIN, SR. JULIETT PEREZ, RICHARD DONOVAN, ANH BUI, JAMES GOODNESS, ROBERT GRIMALDI, WANDA GRIMALDI, MATT POPOLA, LINDA KOSKI, MAKAYLA KOSKI, MARY FERRIS, AMBER PROTZ SIERANT, CHERYL KREINBERG, JONATHON KREINBERG, PETER RUNFOLO, JOYCE RUNFOLO, RICH HARRINGTON, KELLY DONOVAN, JEANNIE PAVLIK, MATTHEW PAVLIK, JAMES PAVLIK, MARYANN GASPER, THERESA ADUBATO, HEATHER INGERSON, MARIA HARRIS, HEATHER ST JOHN, YANCY MUNOZ, KATHLEEN SPOONAUER, CELIA SOUSA, EILEEN KELLY-O'BRIEN, VICTORIA DEVLIN, ROSEMARY RUBSAM, ROSANELLY MONTALVO, GERRI COLON, LAURIE GRIMES, MICHELLE CERNADAS, JOSEPH KRATZER JR., NATALIE WOOD, PATRICIA LANDAU, AMY REITHEL, ANN FERRARI, CYNTHIA GAILLIOT, BERADINE GILRAIN, BONNY HOTRA, BLANCA PASTORE, IZAIDA ROSA GARBANZO, JO RIVERA, DENISE, RICHARD, JOSEPH, JESSICA, NICHOLAS MIRABELLA, JOCELYN EDRALIN, MANUEL VAGUEIRO, KERRI KILLEN, JO ANN NETTA, NANCY ZIMMERMAN, MARIA STREKO, ROCIO CORVALAN, CHRISTINA RESTUCCIA, MICHAEL DEVLIN, GUILLERMO MUNOZ, | Civil Action No. 2:18-cv-12207 (MCA) (LDW)<br><br>**Motion Hearing Date: March 16, 2020**<br><br>**<u>ORAL ARGUMENT REQUESTED</u>** |

|  |  |
|---|---|
| DEBORAH GIVENS/MATE, KAREN ZIMMERMAN, JIM HANNON, ALICE SCALA, EMILY VIDAL, MARY GAINES, SUSAN GIORDINO, ROSEANNE SCHUR, ANGELA LOMBARDI, ROGER SCHUR, MICHAEL MONTALVO, JEFF FERRARI, WILLIAM GORSKI, ROGER STRYESKI, THOMAS BRACKEN, FRED SOOS, SUSAN DOUGHERTY, MICHELE MILLER, ANN MORTIMER, TRISH RICKEN PLUMMER, ANDREA ZAGORSKI SCHUSTER, MARIA BUI, AMY ROSE, KELLY ANN HARRIS, PATRICIA RIMILI BLICHARZ, "BCSH9094", "STDA" AND "BEEZLEBROX", | : : : : : : : : : |
| Defendants. | : : |

## THE CHURCH DEFENDANTS' REPLY BRIEF IN FURTHER SUPPORT OF THEIR MOTION FOR PARTIAL SUMMARY JUDGMENT FOR DISMISSAL OF PLAINTIFF'S TITLE IX CLAIM

CARELLA, BYRNE, CECCHI, OLSTEIN,
BRODY & AGNELLO, P.C.
5 Becker Farm Road
Roseland, New Jersey 07068
(973) 994-1700
Attorneys for Defendants,
Roman Catholic Archdiocese of Newark (i.p.a. "Archdiocese of Newark"), St. Theresa's R.C. Church (i.p.a. "St. Theresa School"), Joseph W. Cardinal Tobin (i.p.a. "Cardinal Joseph Tobin"), Rev. Msgr. Thomas P. Nydegger, V.G. ("i.p.a. Msgr. Nydegger"), Dr. Margaret Dames, James Goodness, Father Joseph Bejgrowicz, Deacon Joseph Caporaso (i.p.a. "Joseph Caporoso"), Sister Helene Godin, Richard Donovan, and Anh Bui

**Of Counsel and On the Brief:**
    Christopher H. Westrick, Esq. (043721997)

**On the Brief:**
    Brian H. Fenlon, Esq. (035071987)

## TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ................................................................................... ii

REPLY STATEMENT OF FACTS .........................................................................1

LEGAL ARGUMENT..............................................................................................6

    POINT I
    COUNT ONE OF THE COMPLAINT, ALLEGING VIOLATION OF TITLE IX,
    IS DEFECTIVELY PLED AND WITHOUT EVIDENTIAL SUPPORT AND
    SHOULD, RESPECTFULLY, BE DISMISSED BY THE COURT ..................6

CONCLUSION........................................................................................................12

# TABLE OF AUTHORITIES

**Cases**                                            **Page(s)**

Board of Tr. of Trucking Employees of North Jersey Welfare Fund, Inc. v. Centra,
  983 F.2d 495 (3d Cir. 1992) ................................................................................. 4

Bowers v. NCAA,
  9 F.Supp. 2d 460 (D.N.J. 1998) .......................................................................... 11

Brennan v. William Paterson College,
  34 F.Supp. 3d 416 (D.N.J. 2014) ........................................................................ 11

Celotex Corp. v. Catrett,
  477 U.S. 317 (1986) ............................................................................................ 12

Fitzgerald v. Barnstable School Committee,
  555 U.S. 246 (2009) .............................................................................................. 7

Gonyo v. Drake Univ.,
  837 F. Supp. 989 (S.D. Iowa 1993) ...................................................................... 6

Holloway v. Howard University,
  206 F. Supp. 3d 446 (D.D.C. 2016) ................................................................. 7, 8

Manolov v. Borough of Manhattan Community College,
  952 F. Supp. 2d 522 (S.D.N.Y. 2013) .................................................................. 7

Norris v. Norwalk Public School,
  124 F. Supp. 2d 791 (D. Conn. 2000) .................................................................. 7

In Re: Pharmacy Benefit Managers, Inc. Trust Litigation,
  582 F.3d 432 (3d Cir. 2009) ......................................................................... 10, 11

In Re: Plavix Marketing Sales Practice and Liability Litigation,
  332 F.Supp. 3d 927 (D.N.J. 2017) ................................................................ 10, 11

Russo v. Diocese of Geensburg,
  2010 WL 3656579 (W.D.Pa., Sept. 15, 2010) ..................................................... 9

Tingley-Kelley v. Trustees of University of PA,
  677 F. Supp. 2d 764 (E.D. Pa. 2010) ................................................................... 7

U.S. v. Local 560 (I.B.T.),
  974 F.2d 315 (3d Cir. 1992) ............................................................................... 11

iii

Valesky v. Aquinas Academy,
  2011 WL 4102584 (W.D.Pa., Sept. 14, 2011) ............................................................... 9, 10

Walsh v. LA High School Athletic Ass'n.,
  616 F.2d 152 (5th Cir. 1980) ................................................................................................ 6

Yusuf v. Vassar College,
  35 F.3d 709 (2d Cir. 1994) .................................................................................................. 7

Zangrillo v. FIT,
  601 F. Supp. 1346 (S.D.N.Y. 1985) ................................................................................ 8, 9

## REPLY STATEMENT OF FACTS

In filing this action, Plaintiff Scott Phillips ("Phillips"), individually and as guardian *ad litem* for his children, S.P., B.P., and K.P. ("Plaintiffs", collectively), sought again to force Defendants Roman Catholic Archdiocese of Newark ("Archdiocese"), St. Theresa's R.C. Church ("St. Theresa"), St. Theresa's School ("STS"), Joseph W. Cardinal Tobin ("Cardinal Tobin"), Rev. Msgr. Thomas P. Nydegger, V.G., Dr. Margaret Dames, James Goodness, Father Joseph Bejgrowicz, Deacon Joseph Caporaso, Sister Helene Godin, Richard Donovan, and Anh Bui (collectively, the "Church Defendants"), to defend his already judicially rejected claims (which are without basis in law or fact), relating to the education of K.P., S.P., and B.P. at STS, including as to STS's denial of re-enrollment to S.P. and K.P. due to their parents' continuum of outrageous misconduct. During the children's enrollment at STS, Phillips and his wife, Theresa Mullen ("Mullen"), on numerous occasions unreasonably and unfairly disagreed with and complained about their children's assignments, grades, student interactions and how extracurricular activities and disciplinary matters were administered by STS. In each of these instances, Phillips and Mullen were unduly confrontational and antagonistic with STS personnel.

In acting to follow their mission of providing a Catholic education to all STS students, the Church Defendants determined that mission was best served without the ongoing disruptions and distractions caused and fomented by Phillips and Mullen. And, therefore, they denied re-enrollment to S.P. and K.P. for the 2017-18 school year. Plaintiffs had already sued the Church Defendants in the Superior Court of New Jersey, Chancery Division, Essex County, Docket No. ESX-C-248-16 (the "Superior Court Action"), seeking <u>inter alia</u>, a preliminary injunction placing S.P. on the boy's seventh grade CYO basketball team for that season. In motions filed therein in early 2018, Plaintiffs attempted to join and sue at least eighty (80) fellow STS parents, students,

and parishioners under damage claims based on perceived slights, amongst others those involving certain online postings and comments made during the basketball controversy, which Plaintiffs determined to make public. The trial court rejected Plaintiff's effort to so expand the Superior Court Action, by denying leave to amend to add those claims. The Church Defendants ultimately prevailed on August 14, 2017 following a full plenary trial, at which Phillips, Mullen and numerous Archdiocesan and STS witnesses testified, including Cardinal Tobin. See Declaration of Brian H. Fenlon, Esq. ("Fenlon Decl."), Exh. B.

In opposing the pending dispositive motion seeking dismissal of any Title IX claim in their Complaint, Plaintiffs once again improperly seek a "another bite at the apple" by attempting to re-litigate the numerous factual and legal determinations rendered against them by the Hon. Donald A. Kessler, J.S.C. in the Superior Court Action. Their opposition did not address the substance of Church Defendants' motion or the fatal deficiencies in their pleading and case. Simply put, Judge Kessler rejected and ruled against Plaintiffs on all of the factual premises of their Complaint and opposition to the pending motion. That Court explicitly ruled the Church Defendants reasonably addressed the numerous complaints and grievances raised and proffered by Phillips and Mullen concerning their children, that there was no expulsion in April 2017, and that no enrollment contract existed for S.P. and K.P. for the upcoming school year.

The factual premises of Plaintiffs' opposition were decided against them in the Superior Court Action. Therefore, their continued assertion by Plaintiffs in this case is without merit and barred by the doctrine of issue preclusion/collateral estoppel. For example, they were doing so even before Judge Kessler in 2017, who opined: "the court would be remiss if it did not emphasize that Plaintiffs' 2016 issues were resolved as to sexual misconduct and bullying, thus, plaintiffs' position, to the extent that it raises these issues time and again, seems to serve little purpose." See

Fenlon Decl., Exh. B (Plenary Op., T.58:15-20). The Court wholly repudiated the Plaintiffs' factual accusations, finding:

> [T]here were issues about the alleged inappropriate sexual behavior which was addressed, the substitute teacher that was addressed, the issue with a gun which was addressed, and the valedictorian issue, which was addressed but not to the satisfaction of the plaintiffs. But everything doesn't have to be to the plaintiffs' satisfaction. Somehow there's a suggestion if it's not to the plaintiffs' way, it's not the right way. And that's not the way any institution has to operate.

Id. (Plenary Op., T.78:8-11).

As to Plaintiffs' false charges concerning the online "petition" and commentary, the Court found:

> Dr. Dames specifically tried to stop the petition and neither STS nor the Archdiocese have any power to take down that petition. What they did about is, Dr. Dames asked members of the community not to sign it anymore and teachers were told by Deacon Joe and Dr. Dames that they were not to sign such a petition going forward. So they did try to act. . . the teachers were told not to post negative facebook comments and members of the community were likewise asked to stop such behavior.

Id. (Plenary Op., T.36:20-37:4). And further that:

> Dr. Dames - - and this is the most significant event to me, most significant of all - - Dr. Dames scheduled a series of listening sessions with STS parents on February 22 . . . she told parents, 'Don't post on the online petition.' Teachers were forbidden from posting on it. She told parents 'Don't make facebook posts.'

Id. (Plenary Op., T.82:14-83:2). In addressing the April 2017 refusal to permit re-enrollment to S.P. and K.P., Judge Kessler ruled, "This Court cannot specifically enforce a contract, because there is no contract to enforce. Even if a contract could be found by a review of the 2016/2017 student handbook, no enforceable right for re-enrollment could be developed based on that agreement under the facts of this case. . ." See Fenlon Cert., Exh. B (Plenary Op., T.71:2-7).

3

Collateral estoppel "proscribes re-litigation when the identical issue already has been fully litigated." Board of Tr. of Trucking Employees of North Jersey Welfare Fund, Inc. v. Centra, 983 F.2d 495, 505 (3d Cir. 1992). Under federal law, it applies when (1) the identical issue was decided in a prior adjudication, (2) there was a final judgment on the merits, (3) the party against whom the bar is asserted was a party or in privity with a party to the prior action, and (4) the party against whom the bar is asserted had a full and fair opportunity to litigate the subject issue. Id. The doctrine reveals Plaintiffs' ongoing presentation of matters, years after they were properly addressed by the Church Defendants and adjudicated against them in the Superior Court Action, is wholly unfair and improper.

Of particular relevance to the Church Defendants' pending motion was Judge Kessler's determination and conclusion that the children were not allowed to return because of their parents' conduct (not their own), which conduct interfered with STS' mission and provided the Court a sufficient basis (amongst several others), to deny Plaintiffs' application to overturn and rescind the re-enrollment denial ruling. See Fenlon Decl., Exh. B (Plenary Op., T.62-4 to 18). The subject factual findings by Judge Kessler (made following a plenary trial), are devastating to Plaintiffs' suggestion that wrongful and discriminatory actions were engaged in by the Church Defendants towards them.

Fatal to Plaintiffs' claims is the Court's finding rejecting their position that the denial of re-enrollment was a pretext made up by STS due to the basketball disputes and Plaintiffs' bullying and harassment allegations. Judge Kessler unequivocally rejected those charges, "this Court is persuaded and I cannot emphasize this enough that the decision to not re-enroll the children has nothing at all to do with basketball. It is plainly not related." Id. at (T.77-18 to 78-1). The Court ruled the erroneous certification filed by Mr. Donovan had no bearing on the issues presented in

the plenary hearing, and Judge Kessler stated he granted the limited basketball injunction due to that inaccurate certification and therefore "that problem was remedied". See Fenlon Decl., Exh. B (Plenary Op., T.78-14 to 79-6).

Equally fatal to Plaintiffs' Title IX claim is their inability to present this Court with competent evidence that the Archdiocese or STS actually received federal funding during the relevant years of 2016-17 and 2017-18. The Church Defendants' have denied the receipt of such funding, under oath, in their interrogatory answers.

## LEGAL ARGUMENT

### POINT I

### COUNT ONE OF THE COMPLAINT, ALLEGING VIOLATION OF TITLE IX, IS DEFECTIVELY PLED AND WITHOUT EVIDENTIAL SUPPORT AND SHOULD, RESPECTFULLY, BE DISMISSED BY THE COURT

In their opposition papers, the Plaintiffs made no effort to address or rebut the recitation by the Church Defendants of the standards governing summary judgment motions and Rule 12(b)(6) motions to dismiss. They further made no bona fide effort to do so as to their substantial recital of the standards governing Title IX damage claims and the case law holding no right exists for students to participate in primary or secondary school athletics. There were two exceptions, the first being their argument that Judge Kessler's preliminary legal finding (that a settled right existed to support the limited basketball injunction in favor of S.P.), is binding on this Court and "law of the case". The second involves their citation to two unreported district court decisions on the issue of federal funding. As to the governing law presented by the Church Defendants which Plaintiffs elected not to respond to, the Court should, respectfully, find their recitation to be undisputed.

Again, it is well settled that students at the primary and secondary school levels possess no liberty or property interest in or right to participate in interscholastic athletics or extracurricular activities. Importantly, Title IX itself "does not establish a right to participate in any particular sport in one's college and there is no constitutional right to participate in intercollegiate or high school athletics." Gonyo v. Drake Univ., 837 F. Supp. 989, 994 (S.D. Iowa 1993). Consequently, a student's interest in participating in a single year of interscholastic primary school athletics amounts to nothing more than a mere expectation, not a constitutionally protected entitlement. Walsh v. LA High School Athletic Ass'n., 616 F.2d 152, 159 (5th Cir. 1980).

6

The Church Defendants' motion seeks dismissal of any Title IX claim in the Complaint, and the requisite elements for which are settled. "To establish a claim under Title IX, the plaintiff must show that (1) she was excluded from participation in, denied the benefits of, or subjected to discrimination in an educational program; (2) that the program receives federal financial assistance; and (3) her exclusion was on the basis of her gender." Tingley-Kelley v. Trustees of University of PA, 677 F. Supp. 2d 764, 775 (E.D. Pa. 2010). Id. Valid Title IX discrimination claims must set forth allegations and present proof of intentional discrimination, and that the alleged discrimination was a substantial and motivating factor for the defendant's challenged conduct. Manolov v. Borough of Manhattan Community College, 952 F. Supp. 2d 522, 531-32 (S.D.N.Y. 2013). To survive dismissal, "plaintiff must specifically allege the events claimed to constitute intentional discrimination as well as circumstances giving rise to a plausible inference of racially discriminatory intent". Id. (quoting Yusuf v. Vassar College, 35 F.3d 709, 713 (2d Cir. 1994)).

Title IX reaches institutions and programs that receive federal funds (which may include nonpublic institutions), but it has consistently been interpreted as not authorizing suit against school officials, teachers and other individuals." Fitzgerald v. Barnstable School Committee, 555 U.S. 246, 257 (2009). Title IX affords private claimants no private right of action against individuals, because that statute itself prohibits discrimination against beneficiaries in programs and activities which receive federal financial assistance, ergo it is educational institutions that must be sued for any violation. Norris v. Norwalk Public School, 124 F. Supp. 2d 791, 796 (D. Conn. 2000). Because no Title IX claims can be asserted against individuals, all of the Plaintiffs' claims against the individual Church Defendants clearly fail and are frivolous, as a matter of law. Id. at 796-98. The threshold issue is whether there has been discrimination based on sex. Holloway v.

Howard University, 206 F. Supp. 3d 446, 452 (D.D.C. 2016). Where a complaint is barren of factual allegations and competent evidence linking the challenged decision to the plaintiff's gender, that claim should be dismissed. Id.

In opposing the Church Defendants' motion, Plaintiffs have presented no competent evidence of allegedly discriminatory conduct on the part of the Church Defendants on the basis of S.P.'s gender, or that she was denied any benefits or participation in STS school activities on that basis. Id. No competent evidence has been proffered that any purportedly discriminatory actions were engaged in intentionally by the Church Defendants on the basis of sex. It is undisputed S.P. was a female seventh grade student at STS, during the 2016-17 school year. That fact alone does not support a Title IX claim. The Plaintiffs' claim fails to state a claim because they have presented this Court with no proofs establishing each necessary claim element, including that the Archdiocese or STS undertook educational programs or activities which receive federal financial assistance.

The factual gravamen of their Title IX claim (indeed of all their claims), were tried before Judge Kessler and that Court entirely rejected them as being without merit. Judge Kessler found that STS properly addressed Phillips and Mullen's numerous grievances and charges of bullying and regarding sexual comments made in the presence of S.P. by fellow pupils. He found the denial of re-enrollment was proper and lawful and not undertaken as an improper pretext due to the Plaintiffs' basketball litigation and other grievances. Further, because Plaintiffs have not specifically alleged and cannot demonstrate these defendant institutions received federal financial assistance triggering the applicability of Title IX, their claim must be dismissed for failure to demonstrate any proper nexus between the Archdiocese and/or STS and federal financial assistance. Zangrillo v. FIT, 601 F. Supp. 1346, 1352 (S.D.N.Y. 1985).

It is undisputed St. Theresa is a separate and distinct corporate entity from the Archdiocese. Both are private religious corporations of the State of New Jersey, under New Jersey law. See Fenlon Decl., Exhs. C and D. St. Theresa owns and operates STS, which does not have any separate legal status separate and apart from St. Theresa. Id. Lastly, the Catholic Charities entity which Plaintiffs argue is owned and operated by the Archdiocese and alleges receives federal funding, is a separate legal corporation that is wholly distinct from the Archdiocese. Id. at Exhs. E and F. That fact is further revealed by the entity's own website, as Plaintiffs were so advised.

The only Title IX cases cited by Plaintiffs contrary to the Church Defendants' recitation, are the decisions in Russo v. Diocese of Geensburg, 2010 WL 3656579 (W.D.Pa., Sept. 15, 2010), and Valesky v. Aquinas Academy, 2011 WL 4102584 (W.D.Pa., Sept. 14, 2011). The factual circumstances present in both cases are clearly distinguishable from this case, in a number of material circumstances. Further, their findings on the issue of federal funding are wholly misunderstood and misconstrued by Plaintiffs.

Russo involved a Pennsylvania Diocese and one of the high schools it owned and operated. The Court concluded (and one of the high schools admitted), that it received federal financial assistance through participation in the federal national school lunch and E-rate programs. Russo, 2010 WL 3656579*1, 3-6. The Court's finding that the subject high schools and Diocese were part of a single "other school system" was termed "an easy task," because those schools had no legal status separate and apart from the Diocese. Therefore, the Diocese was the "other school system" which received federal funding, through the receipt of such funds by the non-corporate educational institutions it owned and operated. Id. at *6. The two schools clearly participated and received federal school lunch and E-rate fiber optic funding. Plaintiffs do not allege the Church Defendants received funds under the national school lunch or E-rate programs. The Church

Defendants answers to Plaintiffs' Interrogatories denied receiving such funding. The Plaintiffs' opposition presented this Court with no competent evidence that either participated in or received federal funds. That fact is fatal to Plaintiffs' claim.

Valesky is also inapposite and clearly distinguishable. In that case, the Diocese reorganized its individual schools "as independent charitable trusts" so it "could exercise *more* control over them." Valesky, 2011 WL 4102584*11 (emphasis in original). The Diocese collected monies from each of its parishes, which it then bundled and divided amongst all the diocesan schools. In that case, there was substantive evidence that the Diocese was sharing such funds with all the schools. Plaintiffs' reliance on Valesky is misplaced, because its facts are wholly distinct from those present in this case. Here, the Archdiocese and St. Theresa are separate and distinct religious corporations. There is no evidence of the receipt federal funding in this case, and none has been presented.

Plaintiffs falsely and melodramatically accuse the Church Defendants of failing to advise this Court of Judge Kessler's settled right ruling, in granting the limited basketball injunction. That charge, as always, is distinctly without merit and it is premised on erroneous assessments of the facts and case law. First, Judge Kessler did not hear or rule on the merits of Plaintiffs' Title IX damage claim in the Superior Court Action. He denied them leave to even raise it, without prejudice to its assertion in a separate action, i.e. this action. Judge Kessler ruled the basketball disputes issues had no relation to STS's denial of re-enrollment to S.P. and K.P. Plaintiffs' charges that the denial of re-enrollment was a pretext were rejected.

Plaintiffs' position that the settled right finding (rendered in the Superior Court Action) constitutes "law of the case" in this federal action is without merit. The "law of the case" rule is a matter of judicial discretion, developed "to maintain consistency and avoid reconsideration of

10

matters once decided during the course of a **single continuing lawsuit**." In Re: Plavix Marketing, Sales Practice and Liability Litigation, 332 F.Supp. 3d 927, 940 (D.N.J. 2017) (citing In Re: Pharmacy Benefit Managers, Inc. Trust Litigation, 582 F.3d 432, 439 (3d Cir. 2009). It is settled that district courts are empowered to modify interlocutory orders and rulings made pre-trial, at any time prior to final judgment. Brennan v. William Paterson College, 34 F.Supp. 3d 416, 427 (D.N.J. 2014).

Here, an interim legal ruling was rendered by Judge Kessler in granting a preliminary injunction pre-trial, not in this case, but in the separate and distinct Superior Court Action. The "law of the case" rule is inapplicable because the governing law holds that, even when rendered in a single federal action, the conclusions of law entered in connection with an injunction are not binding on the Court when it considers motions to dismiss or for summary judgment. Bowers v. NCAA, 9 F.Supp. 2d 460, 467 n.3 (D.N.J. 1998). This Court would not even be bound by any decision by it to grant or deny preliminary relief, because the decision of a preliminary injunction is only a prediction concerning the merits of the case. Id. (quoting U.S. v. Local 560 (I.B.T.), 974 F. 2d 315, 330 (3d Cir. 1992)). Plaintiffs' assertion that Judge Kessler's interim ruling (that the Mercer decision afforded S.P. a settled legal right under Title IX to found the basketball injunction), governs and controls this Court is wholly without merit. See Opposition Declaration of Susan B. McCrea, Exh. H (February 17, 2017 Transcript, T. 25-1 to 26-8). While the Church Defendants believe Judge Kessler mistakenly applied Mercer to the facts, that interim legal ruling is not the "law of case" in this action and is not binding upon this Court in deciding and ruling on the pending motion for partial summary judgment.

Because the Plaintiffs failed to present competent evidence establishing each of the three requisite elements of a valid Title IX claim, including no competent evidence that the Church

Defendants committed any discrimination based on gender or received federal funding triggering that statute's applicability, their Title IX claim must be dismissed. Celotex Corp. v. Catrett, 477 U.S. 317, 322-25 (1986).

## CONCLUSION

For all of the foregoing reasons and those set forth in their moving papers, the Church Defendants respectfully assert this Court should grant their motion for partial summary judgment dismissing with prejudice Count One of the Complaint, to the extent it purports to raise a claim under Title IX of the Education Amendments Act, 20 U.S.C. §1681, et seq.

Respectfully Submitted,

CARELLA, BYRNE, CECCHI,
OLSTEIN, BRODY & AGNELLO, P.C.
Attorneys for Defendants
Roman Catholic Archdiocese of Newark (i.p.a. "Archdiocese of Newark"), St. Theresa's R.C. Church (i.p.a. "St. Theresa School"), Joseph W. Cardinal Tobin (i.p.a. "Cardinal Joseph Tobin"), Rev. Msgr. Thomas P. Nydegger, V.G. ("i.p.a. Msgr. Nydegger"), Dr. Margaret Dames, James Goodness, Father Joseph Bejgrowicz, Deacon Joseph Caporaso (i.p.a. "Joseph Caporoso"), Sister Helene Godin, Richard Donovan, and Anh Bui

By: /s/ Christopher H. Westrick
   CHRISTOPHER H. WESTRICK

Dated: May 14, 2020

#696445v1